Slip Op. 04 - 103

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - x

CARPENTER TECHNOLOGY CORPORATION,    :

                   Plaintiff, :

         v.                 :

UNITED STATES,                   : Court No. 02-00448

                Defendant, :
         -and-
                       :

VIRAJ GROUP,
                       :
         Intervenor-Defendant.
                       :

- - - - - - - - - - - - - - - - - - - - x

<u>Memorandum & Order</u>

[Plaintiff's motion for judgment on
 agency record granted; remanded to
 International Trade Administration.]

Decided:  August 16, 2004

    <u>Collier Shannon Scott, PLLC</u> (<u>Robin H. Gilbert</u>) for the
plaintiff.

    <u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>,
Director, and <u>Patricia M. McCarthy</u>, Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice
(<u>Elizabeth G. Candler</u>); and Office of Chief Counsel for Import
Administration, U.S. Department of Commerce (<u>Christine J. Sohar</u>),
of counsel, for the defendant.


       AQUILINO, Judge:  This is another case contesting a

determination of the International Trade Administration, U.S.

Department of Commerce ("ITA") to group (or not to group) together

Indian enterprises for purposes of enforcement of its <u>Antidumping</u>

<u>Duty Order: Certain Stainless Steel Wire Rods from India</u>, 58 Fed.

Reg. 63,335 (Dec. 1, 1993).  In Stainless Steel Wire Rod From India; Final Results of Antidumping Duty Administrative Review, 65 Fed.Reg. 31,302 (May 17, 2000), for example, the ITA determined not to group together (or "collapse") Viraj Alloys, Ltd. ("VAL") and Viraj Impoexpo, Ltd. ("VIL") for the period of review ("POR"), December 1, 1997 to November 30, 1998.  That determination was affirmed on appeal sub nom. Viraj Group, Ltd. v. United States, 25 CIT 1017, 1031, 162 F.Supp.2d 656, 670 (2001)[hereinafter referred to as "Viraj I"]:

> . . . Commerce determined that VAL produces steel billets and that VIL manufactures both stainless steel bright bar and stainless steel wire rod.  . . . Commerce concluded that the production facilities necessary to manufacture these diverse products were sufficiently different as to require substantial retooling of either facility in order to restructure manufacturing priorities.  . . . Because Viraj failed to meet the first collapsing requirement of 19 C.F.R. § 351.401(f)(1), Commerce stated the issue of price manipulation was moot.  . . . As Plaintiff was unable to comply with the requirements for collapsing set forth in . . . § 351.401(f), this Court . . . finds that Commerce properly chose not to collapse VAL and VIL for purposes of calculating the value of steel billet.

Citations omitted.

I

The next such period of administrative review was December 1, 1999 through November 30, 2000 and resulted in the ITA's Stainless Steel Wire Rod From India; Final Results of Antidumping Duty Administrative Review, 67 Fed.Reg. 37,391 (May 29, 2002), which is at issue in this action based upon the following analysis:

**Collapsing**

The Viraj Group is composed of . . . four companies: Viraj Forgings, Ltd. ("VFL"); . . . VAL[]; . . . VIL[]; and Viraj USA, Inc. . . . , which was incorporated during the POR on May 22, 2000.  The Department has preliminarily determined that these four companies are affiliated for the purposes of this administrative review, and that the three producing companies, VAL, VIL, and VFL, should be collapsed and considered one entity pursuant to section 771(33) of the Act and section 351.401(f) of the Department's regulations.  *See* [ITA] *. . . Collapsing Memorandum of the Viraj Group, Limited*, dated December 31, 2001.

The Department has found the four companies affiliated based on the evidence on the record . . . that Mr. Chhatwal and Mr. Kochhar are the directors for all four companies, and they jointly run all four companies, and their decisions are made for the interest of the group as a whole.  Furthermore, the stock of VAL, VFL and VIL is mainly held by Mr. Chhatwal, Mr. Kochhar, and their relatives.  Collectively, this group holds more than 40% of the shares in VIL, VAL, and VFL.  Also, VFL owns 100% of Viraj USA.

We find that the three producing companies (VAL, VIL, and VFL) should be collapsed because the evidence on the record indicates that VAL, VFL and VIL each use production facilities for similar or identical merchandise that would not require substantial retooling of any facility in order to restructure manufacturing priorities.  For sales to the home market, VAL makes billets and then sends them to an unaffiliated subcontractor for rolling into wire rod.  The sub-contractor returns the black wire rod to VAL who sells it in the home market as subject merchandise.  For sales to the U.S. market, VIL and VFL purchase the billets from VAL and send them to the same sub-contractor that VAL uses for rolling into wire rod.  The subcontractor re-turns the black wire rod which is then annealed at VFL's facilities, pickled at VIL's facilities, packed and then exported.  Consequently, VAL, VFL and VIL are all con-sidered "producers" of this wire rod for purposes of this review.  Given that VAL, VIL and VFL all produced wire rod during the POR, no substantial retooling would be needed to restructure priorities among the three companies.  Moreover, the companies are under common con-

trol and ownership, they use the same production facilities for producing wire rod, and the operations of the companies are intertwined. Therefore, the companies are capable, through their sales and production operations, of manipulating prices or affecting production decisions.[1]

Section 771(33) of the Trade Agreements Act of 1979, as amended, referred to above, 19 U.S.C. §1677(33), defines "affiliated" or "affiliated persons", among others, to be:

> **(B)** Any officer or director of an organization and such organization.
>
> **(C)** Partners.
>
> **(D)** Employer and employee.
>
> **(E)** Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
>
> **(F)** Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.
>
> **(G)** Any person who controls any other person and such other person.
>
> For purposes of this paragraph, a person shall be considered to control another person if the person is legally or operationally in a position to exercise restraint or direction over the other person.

The ITA regulation cited, 19 C.F.R. §351.401(f) (2002), provides:

---

[1] Stainless Steel Wire Rod From India; Preliminary Results of Antidumping Duty Administrative Review, 67 Fed.Reg. 865, 866-67 (Jan. 8, 2002). The ITA's subsequent Final Results, which the plaintiff contests herein, adopted this analysis, as well as that set forth in the agency's Issues and Decision Memorandum ("Dec-Memo") dated May 21, 2002, a copy of which is at tab 4 in Plaintiff's Appendix. See 67 Fed.Reg. at 37,392.

> *Treatment of affiliated producers in antidumping proceedings--*
>
> (1) *In general*. In an antidumping proceeding under this part, the Secretary will treat two or more affiliated producers as a single entity where those producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities and the Secretary concludes that there is a significant potential for the manipulation of price or production.
>
> (2) *Significant potential for manipulation*. In identifying a significant potential for the manipulation of price or production, the factors the Secretary may consider include:
>
>> (i)   The level of common ownership;
>>
>> (ii)  The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and
>>
>> (iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

A

Following publication of the above-quoted analysis in the agency's <u>Preliminary Results</u>, the domestic petitioners, including Carpenter Technology Corporation, objected to the collapsing of VAL into VFL and VIL. Among other things, they asserted that, "without the use of independent unaffiliated sub-contractors, VAL, VFL and VIL are unable to produce subject merchandise." DecMemo, pp. 2-3. The agency responded, in part, as follows:

> Petitioners['] argument that the Department mis-
> interpreted the meaning of section 351.401(f)(1) . . . is
> incorrect.  Petitioners state that the focus of [that]
> section . . . is on production facilities and not product
> lines.  This distinction is not relevant in this case, as
> all three Indian companies use the production facilities
> of the same unrelated company to manufacture wire rod
> through a sub-contracting arrangement.  It is irrelevant
> that only VAL has steel making capabilities.  VIL and VFL
> do not need steel making capabilities in order to produce
> subject merchandise, as all three companies are currently
> producing wire rod, through the sub-contracting process.
> Thus, it is unnecessary for any substantial re-tooling to
> take place for this process to continue.

Id. at 4.

This response precipitated the filing of Carpenter's com-

plaint herein and its motion for judgment upon the agency record

pursuant to USCIT Rule 56.2, which is governed by the standard of

judicial review that the ITA's determination not be "unsupported by

substantial evidence on the record, or otherwise not in accordance

with law".  19 U.S.C. §1516a(b)(1)(B)(i).

The court's jurisdiction is based upon 28 U.S.C. §§

1581(c), 2631(c).

B

The court in Viraj I, supra, pointed out that "Commerce

may collapse companies only when the regulatory requirements are

satisfied".  25 CIT at 1030, 162 F.Supp.2d at 669.  Here, the

plaintiff parses 19 C.F.R. §351.401(f)(1), supra, into three con-

tingent conditions, namely:

> (1) each of the producers has production facilities
> for similar or identical products;

> (2)  those production facilities would not have to be substantially retooled for any of the companies to restructure manufacturing priorities; and

> (3)  if the above conditions exist, the Secretary must also find that there is a significant potential for the manipulation of price or production between the companies.

Plaintiff's Reply Brief, p. 2.  The defendant does not disagree.

See Defendant's Memorandum, p. 10.  It considers the third to be

the "central question" of the regulation, but counsel seemingly

overlook the standard the ITA has set -- significant, not just some

or any, potential manipulation of price or production *viz.*:

> . . . The fact that the affiliated companies use tollers does not preclude the possibility of price manipulation -- the central question of the collapsing regulation.[2]

And:

> . . . Commerce properly collapsed the Viraj Group's affiliated companies because it determined that "[e]ach is able to produce subject merchandise without changing production facilities or product lines."  . . . Based upon this determination, price manipulation is possible.

Id. at 14 (citations omitted).  The fact that the Viraj firms are

"capable, through their sales and production operations, of manipu-

lating prices or affecting production decisions"[3] applies with

equal logic, of course, to any and all business enterprises.

---

[2] Defendant's Memorandum, p. 12.  This seemingly-quaint term, toller, is found in subsection (h) of 19 C.F.R. §351.401:

> *Treatment of subcontractors ("tolling" operations).* The Secretary will not consider a toller or subcontractor to be a manufacturer or producer where the toller or subcontractor does not acquire ownership, and does not control the relevant sale, of the subject merchandise or foreign like product.

[3] 67 Fed.Reg. at 867.

        The ITA's <u>Preliminary Results</u>, quoted hereinabove, cite
its *Collapsing Memorandum* dated December 31, 2001, wherein agency
staff find (at page 5) that VIL, VFL and VAL

> have a significant potential, through their sales and
> production operations, of manipulating prices or affect-
> ing production decisions, given that the companies are
> intertwined and share directors, facilities and informa-
> tion.

In re <u>Stainless Steel Bar from India</u>, 67 Fed.Reg. 45,956 (July 11,
2002), <u>amended</u>, 67 Fed.Reg. 53,336 (Aug. 15, 2002), however, the
nature and affiliation of these same three Viraj firms

> highlight[] the degree of confusion pertaining to the
> interpretation of the collapsing regulation, and the
> incongruity manifested in applying the regulation to the
> facts at hand.

<u>Slater Steels Corp. v. United States</u>, 28 CIT ___, ___, 316 F.Supp.
2d 1368, 1372 (2004).  Indeed, in this case before the court, the
Collapsing Memorandum presents a seeming mix-up of the factors of
19 C.F.R. §351.401(f)(1) with those set forth in subsection (f)(2).
And this kind of "totality-of-the-circumstances" approach has
caused the court in <u>Slater Steels</u> to order and to re-order the ITA
to explain why it did not analyze the "prongs" of subsection (f)(1)
separately from the issue of manipulation per (f)(2).  <u>See</u> 28 CIT
at ___, 316 F.Supp.2d at 1372-74.  <u>Cf</u>. <u>Slater Steels Corp. v.</u>
<u>United States</u>, 27 CIT ___, 279 F.Supp.2d 1370 (2003).

                              (1)

        The court in <u>Viraj I</u> deemed potential manipulation a
"moot"[4] matter in the light of the agency conclusion that the VAL

---

        [4] 25 CIT at 1031, 162 F.Supp.2d at 670.

and VIL production facilities were sufficiently different as to require substantial retooling of either facility in order to re-structure manufacturing priorities.  Apparently, that difference remains the case now.

The record reflects that in Viraj I VAL produced stain-less steel billets that were transferred to a subcontractor for rolling into wire rod and then sold to VIL for processing into the subject merchandise.  During the instant POR, VAL continued to produce billets and then send them to a subcontractor for rolling into such merchandise -- for sale in the home market.  On its part, VIL received billets from VAL which it sent to that same subcon-tractor for rolling.

As for VFL, it did not produce or export subject mer-chandise during the Viraj I POR, but this time, like VIL, it pur-chased VAL billets that it also transferred to the subcontractor of choice for processing[5].  Both VIL and VFL exported the rolled wire rod to the United States via Viraj USA, Inc.

The ITA's Collapsing Memorandum explains that the fore-going reveals but two changes from the previous review in Viraj I, namely, VAL did not produce subject merchandise, and VFL neither produced nor exported at that time.  If this is all that actually

---

[5] As recited above, VIL pickled both its wire rod and, pursuant to contract, that of VFL, while the latter annealed both its product and, pursuant to contract, that of VIL.

changed, the court cannot conclude that Viraj I should not be fol-lowed herein.   In the absence of evidence to the contrary, the court assumes the subcontracts for rolling to have been arm's-length and lawfully-binding that made any price or production manipulation by and between VAL and VIL and/or VFL during the period of review less likely than if those three affiliated enterprises were involved in the manufacture and sale of the subject merchandise exclusively with their own facilities. Cf. 19 C.F.R. 351.401(h), supra n. 2.

II

In the absence of any agency showing herein that dispels this logic based upon substantial evidence on the record, plain-tiff's motion for judgment thereon must be granted to the extent of remand to the ITA for calculation and imposition of individual antidumping-duty margins upon Viraj Impoexpo, Ltd. and Viraj Forgings, Ltd. in the manner of the approach taken by the agency, and affirmed by the court, in Viraj Group, Ltd. v. United States, 25 CIT 1017, 162 F.Supp.2d 656 (2001).

The defendant shall have until October 18, 2004 to carry out this remand, whereupon the plaintiff may have until November 1, 2004 to serve and file any comments on the results thereof.

So ordered.

Decided:  New York, New York
          August 16, 2004

                                    Thomas J. Aquilino, Jr.
                                              Judge