# United States Court of Appeals for the Federal Circuit

2006-1630, 2007-1139

CARPENTER TECHNOLOGY CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellant,

and

VIRAJ GROUP,

Defendant-Appellant.

Sameer P. Yerawadekar, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. On the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Michael D. Panzera, Attorney. Of counsel on the brief was Natasha C. Robinson, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Daniel P. Wendt, Miller & Chevalier Chartered, of Washington, DC, argued for defendant-appellant Viraj Group. With him on the brief was Peter J. Koenig.

Appealed from: United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

2006-1630, 2007-1139

CARPENTER TECHNOLOGY CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellant,

and

VIRAJ GROUP,

Defendant-Appellant.

_____

DECIDED:  December 14, 2007

_____

Before MICHEL, Chief Judge, MAYER and GAJARSA, Circuit Judges.

MICHEL, Chief Judge.

Defendants-Appellants the United States and the Viraj Group ("Viraj") appeal from a final decision of the United States Court of International Trade sustaining the final determination of anti-dumping duties by the Department of Commerce ("Commerce") against Viraj. Carpenter Tech. Corp. v. United States, No. 02-00448, 2006 WL 1876653 (Ct. Int'l Trade July 7, 2006) ("Carpenter II"). Commerce filed that determination, under protest, to comply with the Court of International Trade's earlier decision remanding to Commerce and holding that Commerce's original decision to

treat as a single entity, or "collapse," three companies within the Viraj Group for the purpose of calculating anti-dumping duties was not supported by substantial evidence. Carpenter Tech. Corp. v. United States, 344 F. Supp. 2d 750 (Ct. Int'l Trade 2004) ("Carpenter I"). By filing this appeal, Commerce challenges this earlier decision and seeks to have its original determination reinstated.[1] Because we think it is clear that Commerce's original decision was supported by substantial evidence, we reverse.

## I. BACKGROUND

Commerce issued an anti-dumping order against stainless steel wire rods ("SSWR") from India in 1993. Viraj is a group of Indian companies that produce steel products, some producing SSWR. The three Viraj entities at issue in this case are Viraj Alloys, Ltd. ("VAL"), Viraj Forgings, Ltd. ("VFL"), and Viraj Impoexpo, Ltd. ("VIL"). As Commerce recognized, all three companies are run by the same two directors, and these directors and their relatives are the principal stockholders. Stainless Steel Wire Rod From India; Preliminary Results of Antidumping Duty Administrative Review, 67 Fed. Reg. 865, 866 (Jan. 8, 2002) ("Preliminary Results").

Viraj was first subjected to an administrative review under the SSWR order from December 1997 to November 1998 ("'97-'98 POR"). During that period, VIL was the only one of the three entities that sold SSWR. VAL only produced steel billets, a precursor of SSWR; these steel billets were then sold to VIL, which had them processed

---

[1] Commerce could not have appealed Carpenter I because remand orders are typically not appealable. See Cabot Corp. v. United States, 788 F.2d 1539, 1542 (Fed. Cir. 1986). While Commerce properly appealed from the Court of International Trade's final decision in Carpenter II, its challenge is directed at the Court of International Trade's decision in Carpenter I.

by a subcontractor to form SSWR. VIL then exported the SSWR to the United States.[2] Commerce determined that VAL and VIL, while affiliated, should not be collapsed and calculated an anti-dumping duty for VIL individually. This collapsing determination was sustained by the Court of International Trade. Viraj Group, Ltd. v. United States, 162 F. Supp. 2d 656, 670-71 (Ct. Int'l Trade 2001).

Commerce next conducted an administrative review of Viraj for the period from December 1999 to November 2000 ("'99-'00 POR"). In its preliminary decision, Commerce determined that VAL, VIL, and VFL were all affiliated and should be collapsed due to changes in the SSWR manufacturing activities of these three entities. During the '99-'00 POR, VAL continued to produce and sell steel billets, but it also had a subcontractor process some of its billets into SSWR, which it then sold in its home market (i.e., India) directly. Preliminary Results at 866. VIL continued to purchase steel billets from VAL and have them processed into SSWR by a subcontractor. Id. at 866-67. And VFL also began purchasing billets from VAL during the '99-'00 POR and had a subcontractor process them into SSWR. Id. All three Viraj entities utilized the same subcontractor for SSWR production, though each under its own contract with the subcontractor. Id. Based on these changes since the '97-'98 POR, Commerce preliminarily determined that VAL, VIL, and VFL should be collapsed. Despite objection by domestic interests, Commerce continued to collapse these three entities in its final determination for the '99-'00 POR.

---

[2] VFL's activities at that time were not related to SSWR. VIL also conducted the final pickling and annealing steps on the SSWR before sale. None of the parties nor the Court of International Trade contended that these activities are relevant to the collapsing analysis here, thus we do not consider them.

Carpenter Technology Corporation, one of the domestic interests, challenged this final determination in the Court of International Trade. The Court of International Trade remanded, ordering Commerce to recalculate Viraj's anti-dumping duties without collapsing VAL, VIL, and VFL because the Court of International Trade found its decision to collapse them was not supported by substantial evidence. Carpenter I, 344 F. Supp. 2d at 755. Commerce complied under protest and issued new final results for the '99-'00 POR, which the Court of International Trade sustained. Carpenter II, 2006 WL 1876653, at *5. Commerce then timely filed this appeal, which Viraj joined.

## II.  DISCUSSION

We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(5). We review de novo decisions of the Court of International Trade regarding Commerce's anti-dumping determinations. Aimcor v. United States, 141 F.3d 1098, 1108 (Fed. Cir. 1998). In doing so, we apply the same standard of review as the Court of International Trade applies to Commerce's determination. Campbell Soup Co. v. United States, 107 F.3d 1556, 1559 (Fed. Cir. 1997). Commerce's determination must be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

In essence, collapsing entities means that Commerce will treat the collapsed entities as a single entity for the purpose of calculating anti-dumping margins. The principal authority governing collapsing is 19 C.F.R. § 351.401(f). Under that regulation, three requirements must be met in order for Commerce to collapse two (or more) entities: (1) the entities must be "affiliated," (2) they must "have production facilities for similar or identical products that would not require substantial retooling of either facility

in order to restructure manufacturing priorities," and (3) there must be "a significant potential for the manipulation of price or production." See 19 C.F.R. § 351.401(f)(1). Here, it is undisputed, and the Court of International Trade found, that VAL, VIL, and VFL are "affiliated" within the meaning of the regulation. Thus our analysis focuses on the latter two requirements. In both instances, we hold that Commerce's determination was supported by substantial evidence. Thus the Court of International Trade's decision setting aside Commerce's original determination as to collapsing must be reversed, and Commerce's original determination must be upheld.

A.     Substantial Retooling of Production Facilities

The substantial retooling prong requires first that each and every entity that Commerce proposes to collapse "have production facilities for similar or identical products." 19 C.F.R. § 351.401(f)(1). But a company cannot avoid collapsing simply by outsourcing manufacturing to a subcontractor; while it does not itself possess "production facilities," its use of the subcontractor's facilities is sufficient to satisfy this portion of the requirement. See 19 C.F.R. § 351.401(h) ("The Secretary will not consider a toller or subcontractor to be a manufacturer or producer where the toller or subcontractor does not acquire ownership, and does not control the relevant sale, of the subject merchandise or foreign like product."). Thus the Viraj entities here all "have" production facilities to make SSWR from steel billets; in fact, they all utilize the same facilities since they all use the same subcontractor.

We then must ask whether substantial retooling would be necessary in the production facilities to "restructure manufacturing priorities" between the three entities. See 19 C.F.R. § 351.401(f)(1). Here, it is clear that no retooling would be required at all

because all three Viraj entities utilize the same facilities. Rather than requiring changes to the subcontractor's facilities, Viraj need only alter the quantities ordered for each respective entity to prioritize one entity's production over another's. This is made easier by the fact that all three obtain their steel billets from a common source that is also controlled by Viraj, namely VAL.

The Court of International Trade, while not making an explicit finding as to the substantial retooling prong, seemed to base its decision at least in part on the view that because the evidence does not suggest that the Viraj entities' contracts with their common subcontractor were anything but lawful and at arm's length, the subcontractor would prevent any restructuring of manufacturing priorities between the Viraj entities. But even assuming that the contracts are lawful and at arm's length—which both Commerce and Viraj concede—there is no evidence to indicate that these contracts or the subcontractor's operations would present any obstacle to Viraj shifting production quantities among the three entities. In any event, the proper analysis is whether substantial evidence supports Commerce's determination, and we hold that the Viraj entities' use of a common subcontractor for their SSWR production is substantial evidence that supports Commerce's finding that the substantial retooling prong was satisfied.

## B.     Significant Potential for Manipulation

In order to determine whether "a significant potential for the manipulation of price or production" exists, the collapsing regulation provides that Commerce may look to three factors:

(i) The level of common ownership;

(ii) The extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm; and

(iii) Whether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers.

19 C.F.R. § 351.401(f)(2). Complying with the regulation, Commerce based its determination on detailed factual findings on these factors. For example, Commerce found that all three companies had the same two directors, that those directors effectively controlled all three companies, that those directors and their relatives were the principal stockholders, and that the Viraj entities' operations were substantially intertwined since, for example, they all obtained their steel billets from VAL and used them to produce the same product. Preliminary Results at 866-67. Viraj did not deny, and in fact confirmed, these facts.

The Court of International Trade did not discuss or analyze these findings in its opinion but rather apparently based its holding entirely on the belief, as discussed earlier, that the arm's-length lawful contracts between the subcontractor and each of the Viraj entities made it "less likely" that price or production manipulation would occur. Again, there is no indication that the arm's-length nature or anything else about the contracts would prevent or hinder price or production quantity manipulation among the three companies. There is no reason to believe—and the Court of International Trade opinion cites none—that the subcontractor would, or even could, decline to execute orders from the three companies that altered the quantities each sought, and certainly there is no reason to believe the subcontractor could affect the prices they set. Indeed,

the detailed factual findings of Commerce on the potential for manipulation prong clearly demonstrate that Commerce's determination was supported by substantial evidence.

CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade is

<u>REVERSED</u>.