# United States Court of Appeals for the Federal Circuit

---

**PROSPERITY TIEH ENTERPRISE CO., LTD., YIEH PHUI ENTERPRISE CO., LTD.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, NUCOR CORPORATION, STEEL DYNAMICS, INC., ARCELORMITTAL USA LLC,**
*Defendants-Appellees*

**CALIFORNIA STEEL INDUSTRIES, INC., UNITED STATES STEEL CORPORATION,**
*Defendants*

**v.**

**AK STEEL CORP.,**
*Defendant-Cross-Appellant*

---

2019-1400, 2019-1562, 2019-1563

---

Appeals from the United States Court of International Trade in Nos. 1:16-cv-00138-TCS, 1:16-cv-00154-TCS, Chief Judge Timothy C. Stanceu.

---

Decided: July 15, 2020

---

DONALD CAMERON, JR., Morris, Manning & Martin, LLP, Washington, DC, argued for plaintiff-appellant Prosperity Tieh Enterprise Co., Ltd. Also represented by SABAHAT CHAUDHARY, MARY HODGINS, JULIE MENDOZA, BRADY MILLS, R. WILL PLANERT, EUGENE DEGNAN.

KELLY ALICE SLATER, Appleton Luff Pte. Ltd., Washington, DC, argued for plaintiff-appellant Yieh Phui Enterprise Co., Ltd.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by ETHAN P. DAVIS, CLAUDIA BURKE, JEANNE DAVIDSON; MICHAEL THOMAS GAGAIN, Office of the Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC.

DANIEL SCHNEIDERMAN, King & Spalding LLP, Washington, DC, argued for defendant-cross-appellant.

TIMOTHY C. BRIGHTBILL, Wiley Rein, LLP, Washington, DC, for defendant-appellee Nucor Corporation. Also represented by TESSA V. CAPELOTO, ADAM MILAN TESLIK, MAUREEN E. THORSON, CHRISTOPHER B. WELD.

ROGER BRIAN SCHAGRIN, Schagrin Associates, Washington, DC, for defendant-appellee Steel Dynamics, Inc. Also represented by CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, PAUL WRIGHT JAMESON, LUKE A. MEISNER, KELSEY RULE.

JOHN M. HERRMANN, Kelley Drye & Warren, LLP, Washington, DC, for defendant-appellee Arcelormittal USA LLC. Also represented by KATHLEEN CANNON, ROBERT ALAN LUBERDA, JOSHUA MOREY, PAUL C. ROSENTHAL.

———————————

Before NEWMAN, DYK, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

This appeal arises from an antidumping duty investigation in which the United States Department of Commerce "collapsed" into a single entity three Taiwanese producers of goods subject to the investigation. We conclude that Commerce's collapsing determination is contrary to law and unsupported by substantial evidence. We also conclude on cross-appeal that the United States Court of International Trade erred when it reversed Commerce's determination that Prosperity submitted inaccurate questionnaire responses. We therefore vacate and remand to the Trade Court.

## BACKGROUND

On June 3, 2015, AK Steel Corporation ("AK Steel") filed a petition with the United States Department of Commerce ("Commerce") seeking initiation of an antidumping duty investigation covering certain corrosion-resistant steel products ("CORE") from Taiwan. *Corrosion-Resistant Steel Products*, 80 Fed. Reg. 37228 (June 30, 2015) (Initiation of Investigation). CORE is used in the manufacture of automobile bodies, commercial buildings, residential buildings, and in appliances.

Commerce instituted an investigation into CORE sold in the United States during the period of investigation of April 1, 2014, through March 31, 2015. Commerce selected as mandatory respondents the two largest exporters of CORE from Taiwan: Prosperity Tieh Enterprise Co., Ltd. ("Prosperity") and Yieh Phui Enterprise Co., Ltd. ("Yieh"). During the investigation, Prosperity and Yieh disclosed that they were affiliated with a third company, Synn Industrial Co. Ltd. ("Synn"). Commerce decided to "collapse" all three entities, and treat Prosperity, Yieh, and Synn as

a single entity for purposes of the investigation.   Commerce's collapsing decision is central to this appeal.

## A. "Collapsing"

Antidumping duties are imposed on imports of goods that Commerce determines are being, or are likely to be, sold in the United States at less than fair value.  19 U.S.C. § 1673.[1]  In general, Commerce calculates antidumping duties by subtracting the normal value (the home market price in the exporting country) from the export price (the United States price).  19 U.S.C. § 1677(35).  To establish both normal value and export price, Commerce will make numerous price adjustments for a variety of reasons. These calculations are based on price and trade data provided by, among other sources, companies ("respondents") that are subject to the investigation; U.S. companies that sell goods similar to the goods subject to the investigation; and the petitioner.  In some instances, Commerce will treat related entities as a single entity for purposes of these calculations. *Carpenter Tech. Corp. v. United States*, 510 F.3d 1370, 1373 (Fed. Cir. 2007).  The purpose of collapsing multiple entities into a single entity is to prevent affiliated entities from circumventing antidumping duties by "channel[ing] production of subject merchandise through

---

[1]    Antidumping duty investigations proceed along two distinct tracks administered by Commerce and the U.S. International Trade Commission.  In general, Commerce investigates whether goods that are subject to the investigation are sold in the United States at less than fair value, i.e., "dumped." *Cleo Inc. v. United States*, 501 F.3d 1291, 1294 (Fed. Cir. 2007).  The Commission investigates whether a U.S. "domestic industry" is materially injured or threatened with material injury by reason of goods that Commerce has determined are sold at less than fair value. *Id.* at 1295.  This appeal involves only Commerce's investigation.

the affiliate with the lowest potential dumping margin." *Slater Steels Corp. v. United States*, 279 F. Supp. 2d 1370, 1376 (Ct. Int'l Trade 2003). Commerce's authority to collapse arises out of "the Department's responsibility to prevent circumvention of the antidumping law." *Queen's Flowers de Colom. v. United States*, 981 F. Supp. 617, 622 (Ct. Int'l Trade 1997). This appeal involves Commerce's practice of collapsing entities.

Commerce's practice of collapsing entities is governed by 19 C.F.R. § 351.401(f). Section 351.401(f) sets forth three collapsing requirements: (1) the entities must be "affiliated"; (2) the entities must have "production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities"; and (3) Commerce must find "a significant potential for the manipulation of price or production." *Id.* The third requirement is the focus of this appeal.

To determine whether there exists "a significant potential for the manipulation of price or production," Commerce "may consider" the following non-exhaustive list of factors: (i) the level of common ownership; (ii) the extent to which managerial employees or board members of one company sit on the board of directors for an affiliated company; and (iii) whether operations are intertwined. 19 C.F.R. § 351.401(f)(2). "Commerce need not find all of the factors in the regulation present to find a significant potential for manipulation of price or production." *U.S. Steel Corp. v. United States*, 179 F. Supp. 3d 1114, 1139 (Ct. Int'l Trade 2016). But Commerce must consider the "totality of the circumstances." *Zhaging New Zhongya Aluminum Co. v. United States*, 70 F. Supp. 3d 1298, 1304 (Ct. Int'l Trade 2015); Preamble, 62 Fed. Reg. 27,346 (May 19, 1997) (noting that collapsing determinations "are very much fact-specific in nature, requiring a case-by-case analysis").

When Commerce promulgated 19 C.F.R. § 351.401(f), it emphasized that collapsing requires a "significant" potential for manipulation:

> The suggestion that the Department collapse upon finding *any* potential for price manipulation would lead to collapsing in almost all circumstances in which the Department finds producers to be affiliated. This is neither the Department's current nor intended practice.

62 Fed. Reg. 27,345 (May 19, 1997) (emphasis added). Commerce also clarified that it considers "future manipulation" when assessing the third requirement. *Id.* at 27,346.

### B. Collapse of Prosperity, Yieh, and Synn

In its Preliminary Determination, Commerce collapsed Yieh and Synn ("Yieh/Synn"). *Corrosion-Resistant Steel Products*, 81 Fed. Reg. 72 (Jan. 4, 2016) (Preliminary Determination). Commerce calculated company-specific preliminary dumping margins of 0.0% for both Prosperity and the Yieh/Synn collapsed entity, and preliminarily determined that CORE from Taiwan was not being, and was not likely to be, sold in the United States at less than fair value.

In its Final Determination, Commerce collapsed Prosperity, Yieh, and Synn ("Prosperity-Yieh-Synn"). *Certain Corrosion-Resistant Steel Products*, 81 Fed. Reg. 35,313 (June 2, 2016) (Final Determination). Commerce calculated dumping margins of 10.34% for the Prosperity-Yieh-Synn entity.[2] *Corrosion-Resistant Steel Products*, 81 Fed. Reg. 48,390 (July 25, 2016).

---

[2]    In its initial Final Determination, Commerce determined that the dumping margin for Prosperity-Yieh-

Prosperity and Yieh appealed Commerce's final determination to the United States Court of International Trade ("Trade Court"). Prosperity and Yieh challenged various aspects of Commerce's duty calculations, and they alleged that Commerce considered evidence outside the period of investigation when deciding to collapse Prosperity, Yieh, and Synn. The Trade Court vacated Commerce's Final Determination, concluding that Commerce had improperly relied on evidence outside of the period of investigation. *Prosperity Tieh Enter. Co. v. United States*, 284 F. Supp. 3d 1364, 1373–75 (Ct. Int'l Trade 2018) ("*Prosperity I*"). The Trade Court remanded for Commerce to reperform its collapse analysis. *Id.*

On remand, Commerce emphasized that only one "collapsing"-related issue remained in dispute: whether there existed a "significant potential for the manipulation of price or production" satisfying the third requirement of § 351.401(f) and justifying the collapse of Prosperity, Yieh, and Synn.[3] J.A. 22–23. Commerce determined that the "totality of the circumstances" showed a "significant potential for the manipulation of price or production," and collapsed Prosperity, Synn, and Yieh into a single entity. J.A. 25–28.

When analyzing the third requirement of § 351.401(f) on remand, Commerce only analyzed the relationship between Prosperity and Synn. Commerce found a significant

---

Synn was 3.77%. After AK Steel identified errors in that decision, Commerce amended its Final Determination to reflect a calculated dumping margin of 10.34%.

[3] No party challenged Commerce's decision to collapse Yieh and Synn, and there was no dispute that the first two requirements of § 351.401(f) were met as to all three entities (i.e., Prosperity, Yieh, and Synn were all affiliated and all three parties produced the subject merchandise). J.A. 22–23.

potential for manipulation between Prosperity and Synn. J.A. 27–28. Commerce relied on evidence showing that (i) Prosperity had a 20% ownership interest in Synn; (ii) a key official for Prosperity served on Synn's corporate board; (iii) Prosperity and Synn had a galvanizing services agreement that allowed them to "shift production during a significant portion of the [period of investigation]" ; (iv) the parties had a purchase and sale agreement "indicative of intertwined operations"; and (v) Prosperity had significant business transactions with Synn (sales and purchases) during the period of investigation. J.A. 25–28, 31, 42–43.

Commerce did not consider Prosperity's relationship with Yieh or Prosperity's relationship with Yieh/Synn. Because Commerce had already collapsed Yieh and Synn without objection, it explained that the collapse of all three entities was appropriate based solely on Prosperity's relationship with Synn. Commerce explained that "neither the statute nor regulations" required Commerce to consider Prosperity's relationship to Yieh or to Yieh/Synn. J.A. 39 (opining that there is "no required sequence or hierarchy to be applied with respect to the collapsing analysis where more than two entities are subject to such analysis").

Prosperity and Yieh appealed the remand determination to the Trade Court. The Trade Court affirmed that Commerce's decision to collapse Prosperity, Yieh, and Synn was reasonable and supported by substantial evidence.

## C. Yield Strength

During the investigation, Commerce disseminated questionnaires that sought from Prosperity sales and costs information for CORE products having certain product characteristics. One of the product characteristics identified by Commerce was "minimum specified yield strength," i.e., "yield strength." Yield strength designates the minimum stress under which a CORE product permanently deforms. Standards setting organizations such as the ASTM International establish minimum specific yield strengths

for CORE products, providing consumers with the ability to order CORE products based on a specific yield strength necessary for specific structural applications (e.g., a yield strength of not less than 80,000 psi).

Commerce's questionnaire and accompanying memorandum asked Prosperity to identify its sales using different categories of yield strength, as shown below:

**FIELD NUMBER 3.7:    YIELD STRENGTH**

FIELD NAME: CSTRENH/U

DESCRIPTION:    Yield Strength

1 = Minimum specified yield strength under 25,000 psi

3 = Minimum specified yield strength of >= 25,000 psi but < 35,000 psi

4 = Minimum specified yield strength of >= 35,000 psi but <= 50,000 psi

5 = Minimum specified yield strength of > 50,000 psi but < 65,000 psi

6 = Minimum specified yield strength of >= 65,000 psi but <= 80,000 psi

7 = Minimum specified yield strength over 80,000 psi

J.A. 1177.

In its Final Determination, Commerce determined that Prosperity misreported the yield strength for certain sales. J.A. 17561. Specifically, Commerce found that Prosperity coded products with a minimum yield strength of 80,000 psi as a "7" (minimum yield strength over 80,000 psi) rather than properly coding those products as a "6" (minimum specified yield strength of >=65,000 psi but <= 80,000 psi). *Id.* Prosperity claimed that it had reported yield strength based on its "own internal method," rather than the ASTM industry standard for yield strength. Prosperity Reply Br. 28. Commerce determined that Prosperity failed to comply with its requests for information. On this basis, Commerce applied "adverse facts available" pursuant to 19 U.S.C. § 1677e, applying higher costs to the affected sales in a way that resulted in increased antidumping duties calculated on Prosperity.

In *Prosperity I*, the Trade Court concluded that Commerce's "factual finding that Prosperity 'misreported' yield strength" was unsupported by substantial evidence. *Prosperity I*, 284 F. Supp. 3d at 1378. Prosperity argued that it had provided accurate answers to Commerce's ambiguous questions on yield strength. The Trade Court agreed. The Trade Court found that Commerce had not specifically requested yield strength information "as specified by a standards organization." *Id.* at 1380. Thus, the Trade Court concluded, Prosperity reasonably reported yield strength based on its interpretation of those instructions by reporting yield strength based on its internal method. *Id.* The Trade Court instructed Commerce to accept Prosperity's data as reported. On remand, Commerce complied with the Trade Court's instruction and recalculated the dumping margin without applying adverse facts, resulting in a decreased margin from 10.34 percent to 3.66 percent.

Prosperity and Yieh timely appealed the Trade Court's affirmance of Commerce's collapsing decision. AK Steel cross-appealed the Trade Court's "yield strength" determination. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## ANALYSIS

We review de novo decisions of the Trade Court regarding Commerce's antidumping duty determinations. *Carpenter*, 510 F.3d at 1372. In doing so, we apply the same standard of review as the Court of International Trade applies to Commerce's determination. *Id.*; *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005). We therefore uphold Commerce's determination unless it is unsupported by substantial evidence or is otherwise contrary to law. 19 U.S.C. § 1516a(b)(1)(B)(i). The factual findings underlying Commerce's decision to collapse entities are reviewed for substantial evidence. *Dupont Teijin*, 407 F.3d at 1215. Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### A.

This case presents an issue of first impression to this Court: whether Commerce's collapsing analysis requires that Commerce consider the factors under 19 C.F.R. § 351.401(f) between all entities being collapsed. We conclude that Commerce acted contrary to law when it collapsed Prosperity, Yieh, and Synn without considering the § 351.401(f) factors as between the relationships of Prosperity and Yieh or between Prosperity and Yieh/Synn. We hold that Commerce must consider the "totality of the circumstances" between all entities when it evaluates whether, for purposes of collapsing entities, there is significant potential for manipulation of price or production to circumvent antidumping duties. *Koyo Seiko Co. v. United States*, 516 F. Supp. 2d 1323, 1347 (Ct. Int'l Trade 2007), *aff'd sub nom.* 551 F.3d 1286 (Fed. Cir. 2008); *Zhaoging New Zhongya Aluminum*, 70 F. Supp. 3d at 1304; *Catfish Farmers of Am. v. United States*, 641 F. Supp. 2d 1362, 1373 (Ct. Int'l Trade 2009) (explaining that a collapsing determination is "dependent upon the totality of the facts and circumstances"); *see also* Preamble, 62 Fed. Reg. 27,346 (May 19, 1997) (noting that collapsing determinations "are very much fact-specific in nature, requiring a case-by-case analysis"). Neither the Trade Court nor the parties dispute this requirement. J.A. 23; Government Br. 5–6; AK Steel Br. 6; Prosperity Br. 29; Yieh Br. 13.

An analysis of the "totality of the circumstances" requires an "evaluation of all pertinent evidence." *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1378 (Fed. Cir. 2018), *as amended* (Sept. 20, 2018); *see also Cont'l Plastic Containers v. Owens Brockway Plastic Prod., Inc.*, 141 F.3d 1073, 1082 (Fed. Cir. 1998) (Newman, J. concurring) ("The totality of the circumstances does not rise and fall with any single consideration; it is determined on

all the facts."). As the Trade Court explained in *Bell Supply Co., LLC v. United States*:

> Although a totality of the circumstances analysis eschews bright line rules for balancing, Commerce must explain how each factor weighs in the balance and why. The failure to explain the reasonableness and weight of each factor results in an "I know it when I see it test," which is no test at all.

348 F. Supp. 3d 1281, 1295 (Ct. Int'l Trade 2018).

Commerce claims that it considered the "totality of the circumstances," but it expressly declined to consider evidence related to the relationship between the two largest entities among the three: Prosperity and Yieh. J.A. 39–40. Commerce likewise declined to consider evidence related to the relationship between Prosperity and Yieh/Synn. Instead, Commerce expressly confined the "totality of the circumstances" to evidence concerning the relationship between Prosperity and Synn:

> Specifically, the totality of circumstances takes into consideration the [20] percent ownership of Synn by Prosperity, overlap in the board of directors, galvanizing operations performed by Prosperity for Synn pursuant to a tolling contract which accounted for [8.35] percent of Synn's total production of CORE during the POI and allowed Synn access to certain of Prosperity's books and records, Synn's performance of cold-rolling for Prosperity under a purchase and sale agreement during the first month of the POI, and certain purchases and sales between Prosperity and Synn.

J.A. 38–39 (brackets in original). Commerce never explained how Prosperity, Yieh, and Synn could potentially manipulate pricing and production to the entity with the lowest antidumping duty rate.

Commerce opined that it was "not required to conduct its collapsing analysis with respect to Prosperity and Yieh" and that "it is entirely appropriate to focus on Prosperity's relationship with Synn." J.A. 39, 40. This was error. By disregarding Prosperity's relationship with Yieh and Yieh/Synn, Commerce failed to consider the "totality of circumstances" relevant to whether Prosperity, Yieh, and Synn present a "significant potential for the manipulation of price or production."

Prosperity argues that Commerce can satisfy § 351.401(f) only by analyzing Prosperity's relationship to Yieh/Synn, rather than analyzing the relationships between all three individual entities. Prosperity Br. 16. Prosperity asserts that "once two companies are collapsed into a single entity, they must be treated as a single entity for all purposes." *Id.* at 10 (citing *AK Steel Corp. v. United States*, 34 F. Supp. 2d 756, 768 (Ct. Int'l Trade 1998), *rev'd on other grounds*, 226 F.3d 1361, 1376 (Fed. Cir. 2000)). Prosperity concedes that "*AK Steel* is not binding on this Court," and recognizes that *AK Steel* involved only the question of affiliation under 19 U.S.C. §§ 1677(33)(E)–(F). *Id.* at 15–16. Nonetheless, Prosperity argues, "the logic of *AK Steel* squarely applies here": that "Commerce may not analyze the relationship of members of [a collapsed entity] to the outside world as if they were independent once it has collapsed them." *Id.* (quoting *AK Steel*, 34 F. Supp. 2d at 768). We disagree.

Commerce must consider the "totality of the circumstances" relevant to whether there is "significant potential for manipulation of price or production" by evaluating either: (i) the relationship between each individual entity being considered for collapse (here, Prosperity to Synn, Prosperity to Yieh, and Yieh to Synn) or (ii) the relationship between an individual entity and an already collapsed entity with which it is being considered for further collapsing (here, Prosperity to Yieh/Synn). Because Commerce conducted   neither   of   these   inquiries,   its   Final

Determination is contrary to law and unsupported by substantial evidence. We conclude that the Trade Court erred when it affirmed Commerce's collapsing determination. We vacate that aspect of the Trade Court's judgment.

### B.

On cross-appeal, domestic producer AK Steel argues that the Trade Court erred when it overturned Commerce's factual finding that Prosperity misreported the yield strength of its sales. We agree. Substantial evidence supports Commerce's determination that Prosperity misreported the yield strength of its sales and did not comply with Commerce's requests for information.

For example, Commerce's questionnaire and accompanying memorandum supports Commerce's finding that Commerce's questionnaire sought yield strength information based on the ASTM industry standard. The questionnaire and memorandum provided several examples to assist respondents in responding accurately to the yield strength portions of the questionnaire. J.A. 1177–1178. Each example indicated that yield strength should be reported based on ASTM specifications. *Id.* Substantial evidence also supports Commerce's finding that "minimum specified yield strength" has a common meaning in the industry, which incorporates ASTM specifications. For example, Prosperity's sales and purchase records recite ASTM specifications rather than specifications calculated using Prosperity's "internal method." J.A. 15333–15396. Substantial evidence also supports Commerce's finding that Prosperity failed to provide yield strength information based on the ASTM industry standard: for example, Prosperity's responses to the questionnaire. J.A. 17561, J.A. l9002; *see* Prosperity Reply Br. 28. Taken together, this is evidence that a reasonable mind might accept as adequate to show that Prosperity misreported the yield strength of its sales and did not comply with Commerce's requests for information.

We thus conclude that the Trade Court erred when it reversed Commerce's finding that Prosperity misreported yield strength.  We vacate that aspect of the Trade Court's judgment.

## CONCLUSION

We remand to the Trade Court for further proceedings consistent with this opinion.

**VACATED AND REMANDED**