JIA FARN MANUFACTURING
CO., LTD., Plaintiff,

v.

The SECRETARY OF the U.S. DEPART-
MENT OF COMMERCE, the U.S. De-
partment of Commerce and the United
States of America, Defendants.

Court No. 92–11–00743.

United States Court of
International Trade.

March 26, 1993.

Ablondi & Foster, P.C., F. David Foster and Robert T. Maguire, Washington, DC, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeffrey M. Telep, Barbara Campbell Potter, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiff, a Taiwanese exporter, challenges the Department of Commerce's authority under 19 U.S.C. § 1675 (1988) to conduct administrative reviews. Plaintiff was excluded from the antidumping duty order imposed on sweaters wholly or in chief weight of man-made fiber (sweaters) because it obtained a negative less-than-fair-value (LTFV) determination. However, Commerce is currently reviewing plaintiff based on the information that it is transshipping the merchandise produced by other manufacturers. The issues presented are: (1) whether the court has jurisdiction under 28 U.S.C. § 1581(i) (1988) to hear a plaintiff's challenge on Commerce's authority to conduct administrative reviews; and (2) whether Commerce has the authority to conduct administrative reviews of a plaintiff, excluded from an antidumping duty order, upon the allegation that the plaintiff is transshipping the merchandise produced by other manufacturers under the order. The court holds that Commerce has authority to conduct these administrative reviews.

### Background

Commerce conducted an antidumping investigation of sweaters from Taiwan and found sales at LTFV. *Sweaters Wholly or in Chief Weight of Man–Made Fiber From Taiwan,* 55 Fed.Reg. 34,585 (Dep't Comm.1990) (final determination). Subsequently, an antidumping duty order was imposed on other manufacturers while plaintiff was excluded from the order because it obtained the negative LTFV determination as "manufacturer/producer/exporter." *Sweaters Wholly or in Chief Weight of Man–Made Fiber From Taiwan,* 55 Fed.Reg. 39,033 (Dep't Comm. 1990).

After Commerce received information that plaintiff was transshipping sweaters manufactured by other Taiwanese companies under the order, a team of U.S. officials visited plaintiff and other sweater producers in Taiwan. Commerce thereafter initiated a changed circumstances review of the antidumping duty order "to determine whether [plaintiff] ... acted as a reseller or transshipper of subject merchandise produced by other manufacturers." *Sweaters Wholly or in Chief Weight of Man–Made Fiber From Taiwan,* 57 Fed.Reg. 43,785 (Dep't Comm. 1992) (initiation of changed circumstances admin. review). Plaintiff was also included in the administrative review for the period from September 1991 to August 1992. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 57 Fed.Reg. 48,291, 48,292 (Dep't Comm.1992).

In November 1992, plaintiff commenced this action seeking to enjoin Commerce from conducting the administrative reviews and simultaneously filed a motion for preliminary injunction. Learning that the preliminary results of the changed circumstances review were about to be published, plaintiff moved for a temporary restraining order seeking to enjoin such publication. The court denied the motion because plaintiff failed to show irreparable harm.

Commerce published the preliminary results of changed circumstances review on November 27, 1992, finding that plaintiff is not the manufacturer of the sweaters it exported to the United States. *Sweaters Wholly or in Chief Weight of Man–Made Fiber From Taiwan,* 57 Fed.Reg. 56,322 (Dep't Comm.1992). Accordingly, Commerce ordered Customs to suspend liquidation of all entries of these sweaters, sold or purported

to be manufactured by plaintiff that are entered or withdrawn from warehouse for consumption since the date of the preliminary LTFV determination. Plaintiff is required to pay a cash deposit at the rate of 21.3%, assigned to "all others."

To expedite the disposition of this proceeding, plaintiff waived its request for the court's decision on its motion for preliminary injunction, and the parties agreed to proceed to the merits of the action.

## Discussion

### 1. Jurisdiction

■ Plaintiff brings this action under 28 U.S.C. § 1581(i). "Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States*, 5 Fed.Cir. (T) 122, 124, 824 F.2d 961, 963 (1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

Defendants argue because plaintiff has an adequate remedy under 28 U.S.C. § 1581(c) (1988), it is not entitled to a review under § 1581(i). Defendants maintain that if the administrative review results in the final affirmative determination, plaintiff can obtain reviews under § 1581(c). At issue is whether the relief under § 1581(c) is manifestly inadequate, permitting the action to be brought under § 1581(i).

■ Jurisdiction under § 1581(i) was found in "action[s] seeking to enjoin pending administrative reviews of antidumping and countervailing duty orders because they were alleged to have been improperly initiated." *Carnation Enterprises Pvt. Ltd. v. U.S. Dep't of Commerce*, 13 CIT 604, 612, 719 F.Supp. 1084, 1091 (1989) (citing *Asociacion Colombiana de Exportadores de Flores (Asocoflores) v. United States*, 13 CIT 584, 717 F.Supp. 847 (1989), *aff'd on other grounds*, 8 Fed.Cir. (T) ——, 903 F.2d 1555 (1990)); *see also Techsnabexport, Ltd. v. United States*, 16 CIT ——, ——, 795 F.Supp. 428 (1992). In *Carnation, Asocoflores* and *Techsnabexport*, the plaintiffs "challenge[d] the legality of the proceedings, rather than particular determinations within the proceedings, and de-

mand[ed] to be relieved of the obligation to participate in proceedings they find statutorily and constitutionally infirm." *Techsnabexport*, 16 CIT at ——, 795 F.Supp. at 434.

"[Commerce]'s decision to initiate the administrative review is not a preliminary decision which will be superseded by a final determination, nor is it a decision related to methodology or procedure which may be reviewed by the court following the agency's final determination." *Asocoflores*, 13 CIT at 587, 717 F.Supp. at 850. Finding that the plaintiff's objective in the challenge to the administrative review was to "be spared the considerable time, effort and money normally required of participants in such reviews," the *Asocoflores* court held that the relief by the review under § 1581(c) after the completion of the administrative review was inadequate. *Id.* In *Techsnabexport*, plaintiffs sought to enjoin Commerce from continuing the investigation of uranium imports from the former Soviet Union because the country ceased to exist. The court stated when a plaintiff challenges Commerce's authority to continue antidumping or countervailing duty proceedings, it has jurisdiction to hear the challenge prior to the completion of the proceedings under § 1581(i)(4) "if the opportunity for full relief may be lost by awaiting the final determination." *Techsnabexport*, 16 CIT at ——, 795 F.Supp. at 434.

■ Here, plaintiff challenges Commerce's authority to conduct administrative reviews. Like the plaintiffs in *Asocoflores* and *Techsnabexport*, plaintiff's objective in this action is to avoid further continuance of the administrative reviews which it believes to be contrary to law. In the event that Commerce does not issue final affirmative determinations in the administrative reviews, no antidumping duty will be imposed on plaintiff. In the absence of adverse results, plaintiff may not be able to maintain an action under § 1581(c) for lack of a definite and concrete controversy for the court to render a judgment. *See Georgetown Steel Corp. v. United States*, 16 CIT ——, ——, 810 F.Supp. 318, 321 (1992). Yet, plaintiff may be subject to another administrative review if one is initiated based on the allegation that

plaintiff continues to export the sweaters produced by other manufacturers subject to the order. Since the opportunity for plaintiff to challenge Commerce's authority to conduct an administrative review may be lost by awaiting the final determination, the court holds that the remedy provided under § 1581(c) would be "manifestly inadequate," and the court has jurisdiction under § 1581(i).

### 2. Commerce's Authority to Conduct Administrative Reviews

Commerce has authority to conduct administrative reviews under 19 U.S.C. § 1675, which provides, *inter alia:*

### § 1675. Administrative review of determinations

#### (a) Periodic review of amount of duty

##### (1) In general

At least once during each 12-month period beginning on the anniversary of the date of publication of ... an antidumping duty order under this subtitle ..., the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

.    .    .    .    .

(B) review, and determine ..., the amount of any antidumping duty, ... and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

.    .    .    .    .

#### (b) Review upon information or request

##### (1) In general

Whenever the administering authority ... receives information concerning ... [a suspension] agreement ... or an affirmative determination made under [certain sections] of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register.

.    .    .    .    .

The language of § 1675 explicitly requires the existence of either an antidumping duty order or an affirmative determination as the basis of an administrative review, except for the review of a suspension agreement. The statute, however, does not specify whether it is the company or the merchandise from a country that is the subject of an antidumping duty order or affirmative determination.

Plaintiff argues because it obtained the negative LTFV determination and was excluded from the antidumping duty order, there is no outstanding order or affirmative determination authorizing Commerce to review plaintiff. Plaintiff claims that the antidumping proceeding against it was terminated unconditionally by virtue of the negative LTFV determination. It relies on the Federal Register notices of the LTFV determination and antidumping duty order which listed plaintiff as "manufacturer/producer/exporter" with zero percent dumping margin. Plaintiff claims because it obtained the negative determination as an exporter, the company is excluded from any administrative review regardless of whether it exports the sweaters manufactured by itself or by others under the order. Thus, plaintiff argues unless a new investigation is initiated, Commerce is without authority to conduct a review of plaintiff.

Defendants contend Commerce has authority to conduct administrative reviews of plaintiff because there is an outstanding affirmative LTFV determination and antidumping duty order of the sweaters from Taiwan. According to defendants' interpretation of the statute, an affirmative LTFV determination or an antidumping duty order is imposed on merchandise from a specific country. Defendants do not dispute that plaintiff is not subject to administrative reviews when plaintiff exports the sweaters it manufactures. However, since plaintiff is allegedly exporting the sweaters produced by other manufacturers under the order, defendants argue there exist an outstanding order and affirmative determination of the sweaters that plaintiff has been exporting. Based on this order and determination, defendants claim that Commerce has authority under § 1675 to conduct administrative reviews of

plaintiff as a reseller, exporting the sweaters produced by other manufacturers.

■ "A reviewing court must accord substantial weight to an agency's interpretation of a statute it administers. Though a court may reject an agency interpretation that contravenes clearly discernible legislative intent, its role when that intent is not contravened is to determine whether the agency's interpretation is 'sufficiently reasonable.'" *American Lamb Co. v. United States*, 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986) (citations omitted). The court must determine whether Commerce's interpretation was sufficiently reasonable when it conducted the administrative reviews of plaintiff based on the construction of § 1675 that the merchandise from a country, rather than an individual company, is the subject of the antidumping duty order and affirmative determination.

■ The court finds Commerce's interpretation sufficiently reasonable because it is consistent with the language of other provisions of the antidumping statute. According to 19 U.S.C. § 1673b(b)(1)(A), Commerce makes a preliminary LTFV determination upon merchandise. The statute provides, *inter alia:*

> [Commerce] shall make a determination, based upon the best information available to it at the time of the determination, of whether there is a reasonable basis to believe or suspect that the *merchandise* is being sold, or is likely to be sold, at less than fair value.

*Id.* (emphasis added). Similarly, a final LTFV determination is also made upon merchandise pursuant to 19 U.S.C. § 1673d(a)(1), which provides, *inter alia:*

> [Commerce] shall make a final determination of whether the *merchandise which was the subject of the investigation* is being, or is likely to be, sold in the United States at less than its fair value.

*Id.* (emphasis added). Based on these determinations, an antidumping duty is imposed on merchandise according to 19 U.S.C. § 1673 (1988), which provides, *inter alia:*

> If—
>
> (1) the administering authority determines that a class or kind of foreign

merchandise is being, or is likely to be, sold in the United States at less than its fair value, and

> (2) the Commission determines that—
>
> (A) an industry in the United States—
>
> (i) is materially injured, or
>
> (ii) is threatened with material injury, or
>
> (B) the establishment of an industry in the United States is materially retarded,
>
> by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of that merchandise of importation,
>
> then there shall be imposed upon such *merchandise* an antidumping duty....

*Id.* (emphasis added). The language of these provisions shows that both LTFV determination and antidumping duty order are made upon the merchandise.

Nevertheless, plaintiff argues that the antidumping duty order is imposed on a specific company. Plaintiff relies on Commerce's comment that "[a]ntidumping duty orders apply to all imports from a covered country, except those from firms specifically excluded from the antidumping duty order." *Antidumping Duties*, 54 Fed.Reg. 12,742, 12,755 (Dep't Comm.1989) (final rule). This comment, however, is consistent with Commerce's interpretation that the exclusion of a firm from the order applies only when the firm acts in the same capacity as it was excluded from the order. In the case of plaintiff, the exclusion from the order applies so long as it acts as an exporter of the sweaters it produces because the zero percent dumping margin was assigned to the sweaters it produces. Since the challenged administrative reviews seek to investigate the sweaters produced by those manufacturers other than plaintiff, Commerce has authority to conduct the reviews under § 1675.

This proceeding does not appear to be the first time Commerce has taken the position that the exclusion from the order applies to an exporter only when it acts in the capacity it is excluded. Commerce has stated that an

antidumping investigation resumes when a foreign manufacturer excluded from the order sells the merchandise produced by other companies. *See Steel Wire Strand For Prestressed Concrete From Japan,* 55 Fed.Reg. 28,796 (Dep't Comm.1990) (final determination of changed circumstances review). In that case, Commerce conducted a changed circumstances review to determine whether the discontinuance[1] of the antidumping investigation regarding a company should apply to its successor. *Id.* at 7,759 (initiation & prelim. determination). In response to the comment by the domestic industry, Commerce stated the exclusion of the company from the order "is applicable to merchandise manufactured and exported by [that company]. If the company were to export to the United States merchandise manufactured by another manufacturer, such merchandise would be subject to cash deposits, withholding of appraisement, and potential dumping duties." *Id.* at 28,796. This statement indicates that a company originally excluded from the order would immediately be subject to a cash deposit if it begins to export merchandise manufactured by another manufacturer under the order.

Here, rather than imposing a cash deposit immediately, Commerce is conducting a changed circumstances review to determine whether plaintiff is in fact operating as an exporter of the sweaters manufactured by those under the order. Through the changed circumstances review, Commerce has given plaintiff an opportunity to rebut the allegation that it is reselling or transshipping the sweaters produced by other manufacturers.

■ Plaintiff also contends that Congress did not contemplate the use of changed circumstances review under § 1675(b) in the manner it was applied in this case. According to plaintiff, changed circumstances reviews may be conducted only when Commerce is contemplating a revocation of an antidumping duty order and needs to examine whether the conditions which resulted in

an affirmative determination still exist. Thus, plaintiff contends a company which was once excluded from the antidumping duty order should not be subject to a changed circumstances review under § 1675(b).

Plaintiff's argument is supported neither by statute nor legislative history. The language of § 1675(b) does not limit the use of the changed circumstances reviews to the situation in which Commerce considers revocation of an order. The legislative history states "the administering authority could, after [a § 1675] review, revoke, in whole or in part, a countervailing duty order or an antidumping order." S.Rep. No. 249, 96th Cong., 1st Sess. 80 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 466. This statement, however, does not prohibit Commerce from using a changed circumstances review in a proceeding where a revocation is not contemplated.

■ In addition, plaintiff asserts that Commerce should have initiated a new antidumping proceeding rather than to conduct administrative reviews under § 1675 because a new proceeding would have expedited the investigation of plaintiff's activities. The court disagrees. Although changed circumstances review may take up to 270 days from the initiation to the issuance of the final results, *see* 19 C.F.R. § 353.22(f)(1)(viii), Commerce can expedite the review. In this case, Commerce was able to issue the preliminary results of the changed circumstances review in 66 days. A new proceeding which must involve both the International Trade Commission (ITC) and Commerce probably would not provide more expeditious results.

More importantly, a changed circumstances review provides a more effective measure to counteract alleged dumping. If a new proceeding is initiated, both the ITC and Commerce must issue affirmative preliminary determinations before liquidation is suspended and a cash deposit can be imposed. *See* 19 U.S.C. § 1673b(d) (1988). Therefore, the merchandise which would have entered

---

1. The "discontinuance" was determined under the old antidumping statute prior to the enactment of the Trade Agreements Act of 1979. Pub.L. 96–39, 93 Stat. 144 (codified as amended in scattered sections of 19 U.S.C.). *See Steel Wire Strand For Prestressed Concrete From Japan,* 43 Fed.Reg. 38,495 (Dep't Treasury 1978) (LTFV Determination).

before the affirmative LTFV determination of the new proceeding might escape possible antidumping duties. In contrast, by virtue of the changed circumstances review, a cash deposit is imposed retroactively to the date of the preliminary LTFV determination. Plaintiff is required to pay a cash deposit on the unliquidated sweaters entered or withdrawn from warehouse for consumption from April 1991. *See Sweaters Wholly or in Chief Weight of Man–Made Fiber From Taiwan,* 57 Fed.Reg. 56,324 (Dep't Comm.1992). The court finds that Commerce acted reasonably to prevent possible circumvention of antidumping duties.

Neither the antidumping statutes nor regulations provide a specific mechanism designed to investigate an exporter which allegedly exports the merchandise produced by other manufacturers when it is excluded from the antidumping duty order based on the negative LTFV determination. Nevertheless, in light of the existing affirmative determination on the sweaters from Taiwan, it was reasonable for Commerce to conduct changed circumstances review under § 1675(b) to investigate the allegation. Likewise, the inclusion of plaintiff in the periodic administrative review is also justified based on the outstanding antidumping duty order covering the sweaters from Taiwan.

### Conclusion

The court holds that LTFV determinations and antidumping duty orders are rendered upon the subject merchandise from a certain country under the investigation. The court also holds that the use of changed circumstances review is not limited to the situation where a revocation is contemplated. Commerce's interpretation of § 1675 was, therefore, sufficiently reasonable.