Slip Op 09-15

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Nicholas Tsoucalas, Senior Judge**

_____
                                            :
SAHAVIRIYA STEEL INDUSTRIES PUBLIC          :
COMPANY LIMITED,                            :
                                            :
           Plaintiff,                       :
                                            :
        v.                                  :
                                            :  Court No. 08-00353
UNITED STATES,                              :
                                            :
           Defendant,                       :
                                            :
        and                                 :
                                            :
UNITED STATES STEEL CORPORATION,            :
                                            :
           Defendant-Intervenor.            :
_____ :

## OPINION

**Held**: Defendant and Defendant-Intervenor's motions for dismissal for lack of subject matter jurisdiction and lack of ripeness are granted. Plaintiff's motion for preliminary injunction is denied.

Dated: February 24, 2009

Hughes Hubbard & Reed LLP, (Kenneth J. Pierce, Robert L. LaFrankie, Victor S. Mroczka) for Sahaviriya Steel Industries Public Company Limited, Plaintiff.

Michael F. Hertz, Deputy Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Jane C. Dempsey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; Of Counsel: Aaron P. Kleiner, Office of Chief Counsel for Import Administration, United States Department of Commerce, for the United States, Defendant.

Skadden, Arps, Slate, Meagher & Flom LLP, (Robert E. Lighthizer, John J. Mangan, Jeffrey D. Gerrish, Ellen J. Schneider, Nathaniel B. Bolin) for United States Steel Corporation, Defendant-Intervenor.

**TSOUCALAS, Senior Judge:** Pending before the Court are three motions. On one side, Plaintiff, Sahaviriya Steel Industries Public Company Limited ("SSI") moves this Court, pursuant to USCIT Rule 65(a), for a preliminary injunction to enjoin the United States Department of Commerce ("Commerce" or "Dept.") from continuing the changed circumstances review of SSI's sales of certain hot-rolled carbon steel flat products from Thailand. See Pl.'s Mot. for Prelim. Inj. & to Advance & Consol. Trial on the Merits. SSI further moves, pursuant to USCIT R. 65(a)(2), to advance and consolidate a trial on the merits with a hearing of its application for injunctive relief. See id.

On the other side, Defendant and Defendant-Intervenor each move for dismissal, pursuant to USCIT R. 12(b)(1) and 28 U.S.C. § 1581, for lack of subject matter jurisdiction and because the action is not ripe for judicial review. See Def.'s Mot. to Dismiss; Mot. to Dismiss of Def.-Int. On December 12, 2008, the Court heard oral argument to determine whether preliminary injunctive relief or dismissal was appropriate.

For the reasons set forth below, the Court finds it lacks jurisdiction to hear the claims raised by Plaintiff, and grants Defendant and Defendant-Intervenor's motions to dismiss. The

Court, therefore, need not address Plaintiff's stated grounds for injunctive relief.

**BACKGROUND**

On November 29, 2001, Commerce issued an antidumping duty order on certain hot-rolled carbon steel flat products from Thailand. See Antidumping Duty Order: Certain Hot-Rolled Carbon Steel Flat Products From Thailand, 66 Fed. Reg. 59,562 (Nov. 29, 2001). The order was based on separate findings by Commerce and the U.S. International Trade Commission ("ITC" or "Commission") that certain hot-rolled steel from Thailand had been sold in the United States at less than fair value resulting in material injury to the domestic hot-rolled steel industry. See id. at 59,563-64. SSI was among the Thai producers of subject merchandise included in the antidumping duty order. See id. at 59,563.

Over the following three years, Commerce conducted a series of administrative reviews of the order in which it determined that SSI had not sold hot-rolled steel at less than normal value. See Certain Hot-Rolled Carbon Steel Flat Products From Thailand: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 69 Fed. Reg. 19,388 (Apr. 13, 2004); Certain Hot-Rolled Carbon Steel Flat Products from Thailand: Rescission of Antidumping Duty Administrative Review, 69 Fed. Reg. 18,349 (Apr. 7, 2004) (this second administrative review was rescinded when the parties requesting the review withdrew their requests); Certain Hot-Rolled

Carbon Steel Flat Products from Thailand: Final Results of Antidumping Duty Administrative Review, Partial Revocation of Antidumping Duty Order and Partial Rescission of Antidumping Duty Administrative Review ("Final Results"), 71 Fed. Reg. 28,659 (May 17, 2006). In November 2004, during the course of the third administrative review, SSI requested partial revocation of the order with respect to its sales of subject merchandise. See Complaint ¶ 8; Mem. of Def.-Int. in Supp. of Mot. to Dismiss & Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.-Int.'s Memorandum"), Exhibit 2 (SSI's Request for Administrative Review, Request for Revocation of Antidumping Duty Order in Part, and Entry of Appearance) ("SSI Request"). In its revocation request, SSI agreed "to immediate reinstatement of the order, so long as any Thai exporter or producer is subject to it, should the Department determine that SSI, subsequent to the requested revocation, sold the subject merchandise at less than fair value." SSI Request at 3.

After having determined that SSI had sold the subject merchandise at not less than normal value for a period of three consecutive years, Commerce revoked the antidumping duty order for SSI's exports of hot-rolled steel. See Final Results, 71 Fed. Reg. 28,661; see also Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review, Partial Revocation of Antidumping Duty Order and Partial Rescission of

Antidumping Duty Administrative Review of Certain Hot-Rolled Carbon Steel Flat Products from Thailand ("Issues and Decision Memorandum"), cmt. 1, p. 12. Despite partial revocation of the antidumping order with respect to SSI, the order itself remained in effect as to other Thai producers and exporters. See Certain Hot-Rolled Carbon Steel Flat Products from India, Indonesia, the People's Republic of China, Taiwan, Thailand, and Ukraine: Continuation of Antidumping Duty and Countervailing Duty Orders, 72 Fed. Reg. 73,316 (Dec. 27, 2007).

On November 8, 2006, U.S. Steel submitted an allegation to Commerce, claiming that SSI had resumed sales of hot-rolled steel products at less than normal value subsequent to its removal from the original antidumping order. See Initiation of Antidumping Duty Changed Circumstances Review: Certain Hot-Rolled Carbon Steel Flat Products from Thailand ("Notice of Initiation"), 73 Fed. Reg. 18,766 (Apr. 7, 2008). Consistent with agency regulations,[1] U.S. Steel requested that Commerce initiate a changed circumstances review to reinstate the order with regard to SSI's exports of subject merchandise to the United States. See id. Accordingly,

---

[1] The Department's regulations provide that if Commerce finds that changed circumstances exist, it "will conduct a changed circumstances review under § 351.216." 19 C.F.R. § 351.222(g)(2). Thus, "an interested party may request a changed circumstances review . . . of an order . . . . Within 45 days after the date on which a request is filed, the Secretary will determine whether to initiate a changed circumstances review." 19 C.F.R. § 351.216(b).

Commerce conducted an analysis of the information it received from U.S. Steel to determine the sufficiency of its allegations. While U.S. Steel's initial request for the changed circumstances review was submitted on Nov. 8, 2006, additional information required by Commerce was gathered over the course of a seventeen month period. For example, Commerce issued several supplemental questionnaires between December 2006 and February 2008 seeking additional information regarding petitioner's allegations. U.S. Steel filed its last response with Commerce on March 5, 2008.

Finally, on March 28, 2008, Commerce, relying on its authority under section 751(b)(1) of the Tariff Act of 1930,[2] codified at 19 U.S.C. § 1675(b)(1),[3] initiated the underlying changed circumstances review to determine whether SSI had sold hot-rolled

---

[2] Further citations to the Tariff Act of 1930 are to the relevant provision in Title 19 of the United States Code, 2000 edition.

[3] The relevant portions of 19 U.S.C. § 1675(b) state:
Reviews based on changed circumstances

(1) In general
    Whenever the administering authority . . . receives information concerning, or a request from an interested party for a review of-

> (A) a final affirmative determination that resulted in an antidumping duty order under this subtitle . . . .

which shows changed circumstances sufficient to warrant a review of such determination . . ., the administering authority . . . shall conduct a review of the determination[.]

steel at less than normal value, during the period July 1, 2006 through June 30, 2007, and whether it should therefore be reinstated in the original antidumping duty order. See Notice of Initiation, 73 Fed. Reg. at 18,771. Following initiation, Commerce issued several questionnaires to SSI in which it requested data on the company's U.S. sales, costs of production and other company specific information for the period of review. See Def.-Int.'s Memorandum, Exhibit 11 (Questionnaire Issued by the Dept. of Commerce in Changed Circumstances Review of Certain Hot-Rolled Carbon Steel Flat Products from Thailand (Apr. 11, 2008)); Exhibit 16 (The Department of Commerce's First Supplemental Questionnaire (July, 18, 2008)); Exhibit 17 (The Department of Commerce's Second Supplemental Questionnaire (Aug. 7, 2008)); The Department of Commerce's Supplemental Cost Information Questionnaire (Aug. 6, 2008); The Department of Commerce's Third Supplemental Questionnaire (Sept. 18, 2008). SSI responded to these requests for information, while simultaneously challenging the Department's authority to conduct a changed circumstances review for the purpose of reinstating a previously revoked antidumping duty order. See Complaint, Exhibit 3 (SSI Request to Reconsider and Terminate Initiation of Changed Circumstances Review (Aug. 25, 2008)).

Plaintiff commenced this action on October 7, 2008, and seeks injunctive relief to prevent the Department from continuing with its changed circumstances review. Defendant and Defendant-

Intervenor oppose Plaintiff's motion, and urge this Court to dismiss the instant action for lack of subject matter jurisdiction and because the claims contained therein are not yet ripe.

## ARGUMENTS OF THE PARTIES

### I.   Plaintiff's Arguments

Plaintiff challenges the Department's legal authority to initiate a changed circumstances review for the purpose of reinstating a previously revoked antidumping duty order because "[s]ection 751(b) of the Act does not authorize the Department to reinstate an order with respect to merchandise covered by a revocation."  Mem. in Supp. of  Pl.'s Mot. to Advance & Consol. Trial on the Merits & for Prelim. Inj. Relief ("Pl.'s Memorandum") at 12 (internal citation omitted).  SSI argues that section 1675(b) only grants authority to Commerce and the ITC to conduct a changed circumstances review of "a final affirmative determination that resulted in an antidumping duty order" provided there are changed circumstances sufficient to warrant a review. 19 U.S.C. § 1675(b)(1); see also Pl.'s Memorandum at 13.  According to Plaintiff, there are only two final affirmative determinations that result in an antidumping duty order.  See Pl.'s Memorandum at 13. A final dumping determination made by Commerce in a less-than-fair value investigation, and a final injury determination made by the Commission.  See id.  SSI looks to section 1675(d)(1) as "the only other section of the statute that mentions [section 1675(b)] or

sheds any light on the meaning of a changed circumstances review" and notes that "[t]here is no reference anywhere in the statute to 'reinstatement' of an antidumping duty order."[4]  Id.  Since the statute does not specifically address reinstatement, Plaintiff claims, the only way SSI's exports may be subject to antidumping duties is if Commerce initiates a new investigation followed by a dumping determination by the Department and an injury determination by the ITC.  See id. at 18.

Plaintiff relies on this Court's decision in Asahi Chemical Indus. Co. Ltd., v. United States, 13 CIT 987, 727 F. Supp. 625 (1989), as further evidence that section 1675(b) precludes Commerce from reinstating an order against merchandise that was previously revoked.  See id. at 14.  The Court in Asahi examined the Department's reinstatement regulation in effect at the time, 19 C.F.R. § 353.54(e) (1988), and whether its requirement that a party agree to immediate suspension of liquidation and reinstatement of the antidumping duty order was enforceable.  Commerce's previous regulation read in pertinent part:

> Before the Secretary may tentatively revoke a Finding or
> an Order . . . the parties who are subject to the
> revocation . . . must agree in writing to an immediate

---

[4] Section 1675(d)(1) states in part that:

The administering authority may revoke, in whole or in part, . . . an antidumping duty order . . . after review under subsection (a) [administrative review] or (b) [changed circumstances review] of this section.

> suspension of liquidation and reinstatement of the
> Finding or Order . . . if circumstances develop which
> indicate that the merchandise thereafter imported into
> the United States is being sold at less than fair value.

19 C.F.R. § 353.54(e) (1988). SSI interprets the Court's holding

in Asahi as standing for the proposition that revocation of the

antidumping order renders the order moot with respect to the

merchandise covered by the previous revocation. See Pl.'s

Memorandum at 14. Therefore, "once the Department makes a

revocation determination, 'the antidumping duty order ceases to be

operative and may not be reinstated.'" Id. (quoting Asahi, 13 CIT

at 990, 727 F. Supp. 625, 628). Plaintiff contends that the

Department's current regulation, 19 C.F.R. § 351.222(b)(2)(i)(B),

is "substantively no different from the regulation at issue in

Asahi," id. at 15, and contains the same defects identified by the

Court in that case. See id. at 16. Namely, that the regulation

abrogates the statutory requirement of affirmative dumping and

injury determinations necessary to impose duties. See id. at 15.

Commerce's current reinstatement regulation provides:

> In determining whether to revoke an antidumping duty
> order in part, the Secretary will consider:
>
> Whether, for any exporter or producer that the Secretary
> previously has determined to have sold the subject
> merchandise at less than normal value, the exporter or
> producer agrees in writing to its immediate reinstatement
> in the order, as long as any exporter or producer is
> subject to the order, if the Secretary concludes that the
> exporter or producer, subsequent to the revocation, sold
> the subject merchandise at less than normal value.

19 C.F.R. § 351.222(b)(2)(i)(B). Therefore, Plaintiff concludes, the Court's holding in Asahi is equally applicable here, and eliminates the Department's legal authority to reinstate the order over SSI. See Pl.'s Memorandum at 18.

Plaintiff submits that this Court has jurisdiction under 28 U.S.C. § 1581(i), specifically subparagraphs (i)(2) and (i)(4),[5] to hear the claim that "the Department's initiation of a changed circumstances review of SSI for the purpose of reinstating an already revoked order is illegal and ultra vires." Complaint ¶ 21. SSI maintains that section 1581(i) jurisdiction exists in cases, where as here, the other potential mechanism for judicial review under 28 U.S.C. § 1581(c) is "manifestly inadequate." Pl.'s

---

[5] The relevant portions of 28 U.S.C. § 1581(i) read as follows:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section . . . the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for-
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
>
> This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under [19 U.S.C. § 1516a].

Memorandum at 8. According to SSI, the "manifestly inadequate" standard is met when an agency's actions are ultra vires. See id. Plaintiff references its earlier argument that section 1675(b)(1) only provides for a changed circumstances review of final affirmative dumping or injury determinations, and not for the purpose of reinstating a previously revoked antidumping duty order. Thus, any attempt by the Department to reinstate such an order in a changed circumstances review is contrary to law, and beyond the scope of its statutory authority. See id.

SSI maintains that the Court's broad injunctive powers include the ability to "halt an ultra vires proceeding," id. at 7, and offers as support for its position, a line of cases in which the Court exercised its residual jurisdiction to prevent Commerce from continuing with an allegedly unlawful proceeding. See Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 584, 717 F. Supp. 847 ("Ascoflores") (1989); Techsnabexport, Ltd. v. United States, 16 CIT 420, 795 F. Supp. 428 (1992); Jia Farn Mfg. Co., Ltd. v. United States, 17 CIT 187, 817 F. Supp. 969 (1993); Hysla S.A. v. United States, 22 CIT 44 ("Hysla II") (1998); Dofasco Inc. v. United States, 28 CIT 263, 326 F. Supp. 2d 1340 (2004). Plaintiff attempts to apply a similar rationale as the cases cited, and argues that section 1581(i) jurisdiction is proper because it is challenging Commerce's authority to conduct the changed circumstances review in the first instance. Hence, the

relief SSI seeks cannot be obtained through a judicial challenge instituted after the review has been completed.  See Pl.'s Memorandum at 8.  By "forcing Plaintiff to wait until the Department completes the unlawful proceeding renders the relief sought moot."  Id.

Additionally, SSI complains that the remedy afforded under section 1581(c) is "manifestly inadequate" because Plaintiff's forced  participation in the changed circumstances review places a substantial burden on the company.  See id. at 9.  Since the review is one for possible reinstatement of a partially revoked order, participation in it involves the same level of data collection associated with an administrative review.  This, according to SSI, is "extremely burdensome," and renders section 1581(c) "manifestly inadequate."  Id.

The remainder of Plaintiff's arguments focus on the factors a court must consider in determining the propriety of injunctive relief.  Because these claims are unrelated to the threshold determination of jurisdiction, the Court need not address them at this time.

## II.  Defendants' Arguments

Commerce and U.S. Steel, at times, present similar arguments in their motions to dismiss and supporting memoranda, therefore the Court will address the parties' arguments collectively ("Defendants"), with appropriate attribution as to the source of

each claim.

Defendants counter that Plaintiff may not bring its challenge under section 1581(i) because it may seek judicial review pursuant to another jurisdictional provision, specifically, 28 U.S.C. § 1581(c), after Commerce issues its final determination in the changed circumstances review. See Def.'s Mem. in Supp. of Mot. to Dismiss & Opp'n to Pl.'s Mot. for Prelim. Inj. ("Def.'s Memorandum") at 12; Def.-Int.'s Memorandum at 7. Defendants reference the exclusionary language in section 1581(i) which precludes jurisdiction under that subsection when the action being challenged is reviewable under section 1516a. See Def.'s Memorandum at 12; Def.-Int.'s Memorandum at 8. Because a changed circumstances review is specifically identified as reviewable under section 1516a(a)(2)(B)(iii), Defendants argue, the express exclusion of section 1581(i) applies. See Def.'s Memorandum at 12-13; Def.-Int.'s Memorandum at 9. Moreover, section 1581(c) provides that the Court "shall have exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]." 28 U.S.C. § 1581(c). Therefore, another subsection of 1581 is available to SSI which, according to Defendants, renders Plaintiff's jurisdictional argument unsound. See Def.'s Memorandum at 13; Def.-Int.'s Memorandum at 9.

Furthermore, Defendants assert, the remedy provided for under section 1581(c) is not "manifestly inadequate." See Def.'s

Memorandum at 10; Def.-Int.'s Memorandum at 10.  Noting that SSI is contesting the Department's authority to initiate a changed circumstances review for the purpose of reinstating an antidumping duty order, Defendants argue that "SSI will have a full opportunity to seek relief from this Court pursuant to § 1581(c) to challenge Commerce's initiation of the review."  Def.-Int.'s Memorandum at 9.  Thus, there is nothing in the present case that would render review under that section "manifestly inadequate."  See id. at 8.  Moreover, Defendants argue, "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate."  Id. at 10 (quoting Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006).

Defendants next contest Plaintiff's characterization of Commerce's actions as ultra vires, and maintain that ultra vires conduct is but one factor a court will consider in assessing manifest inadequacy of the normal judicial review process.  See id. at 11.  In order for the Court to find that a party can forgo relief under the normal process, the party must first establish that the agency conduct was "patently ultra vires," or ultra vires without question.  Id. (quoting Gov't of the People's Republic of China v. United States, 31 CIT __, 483 F. Supp. 2d 1274, 1282 (2007) (citation omitted).  Defendants explain that, similar to the Department's revocation authority, Commerce's authority to conduct

a changed circumstances review to assess reinstatement of a producer in an antidumping order, is statutorily based (i.e., 19 U.S.C. § 1675(b)(1) and § 1675(d)). See Def.'s Memorandum at 18; Def.-Int.'s Memorandum at 12, 22. Defendants submit that Commerce's authority under this section is extremely broad, empowering the agency "to conduct a changed circumstances review whenever there are 'changed circumstances sufficient to warrant a review' of the antidumping order." Def.-Int.'s Memorandum at 13 (quoting Mittal Canada, Inc. v. United States, 30 CIT 1565, 1572 n.7, 461 F. Supp. 2d 1325, 1332 (2006)). As a result, the Department's initiation of the review is proper and the "patently ultra vires" standard is not met. See id. at 11-13. Defendants also refute Plaintiff's contention that its forced participation in the changed circumstances review imposes a substantial burden on SSI, thus rendering jurisdiction under section 1581(c) "manifestly inadequate." See id. at 15; Def.'s Memorandum at 10. The "inconvenience and expense" associated with the review, according to Defendants, are an inherent part of the "administrative and judicial review process," and "cannot therefore constitute manifest inadequacy." Def.-Int.'s Memorandum at 15 (quoting Gov't of the PRC, 31 CIT __, 483 F. Supp. 2d 1274, 1283) (citation omitted); see also Def.'s Memorandum at 10.

Defendants offer an interpretation of this Court's holding in Asahi that does not invalidate Commerce's authority to order

reinstatement. See Def.'s Memorandum at 20-22; Def.-Int.'s Memorandum at 24-25. Contrary to Plaintiff's argument, Defendants maintain that the Court's determination in Asahi was confined to the regulation in place at the time. See Def.'s Memorandum at 20. Pointing out that Commerce's current reinstatement regulation has since been substantively amended, Defendants claim that the new regulation cures each of the defects identified by the Asahi Court. See Def.-Int.'s Memorandum at 26.

Moreover, Defendants add, this action is not ripe for judicial consideration because Commerce has not yet issued the final results of its changed circumstances review, and SSI has failed to show the requisite undue hardship. See Def.'s Memorandum at 7. Defendants rely on the factors a court looks to in determining whether an appeal from an administrative determination is ripe for review, such as the fitness of the issue for judicial decision, and the hardship to the parties of withholding court consideration. See id. As to the first factor, Defendants argue that Commerce's decision to initiate a changed circumstances review does not represent the Department's final position on the matter, and is more analogous to a "threshold determination" than final agency action. Id. (quoting U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dept. of Commerce, 413 F3d 1344, 1349 (Fed. Cir. 2005). For example, Commerce has not issued its final results, and may

determine that SSI has not resumed dumping.[6] Referencing the relevant statutory provisions,[7] Defendants claim that permitting SSI to "appeal nonfinal [agency] decisions would eviscerate the finality requirements memorialized in the statute and legislative history." Id. at 8. Therefore, SSI's claims should be dismissed as unripe. See id. at 7.

With regard to the second factor, Defendants maintain that there is no undue hardship to SSI of withholding court consideration because SSI faces no exceptional burden from its participation in the underlying changed circumstances review. See id. at 9. No legal or practical effect emanates from its involvement, except the burden of responding to the Department's inquiries. See id. Defendants contend that the "expense and risk associated with the review are not functions of whether the investigation is ultra vires, but merely an inherent feature of the retrospective system designed by Congress." Id. at 9-10 (citing D & L Supply Co. v. United States, 17 CIT 1419, 1422, 841 F. Supp.

[6] During the pendency of this action, Commerce issued its preliminary results with regard to the underlying review. See Certain Hot-Rolled Carbon Steel Flat Products from Thailand: Preliminary Results of Changed Circumstances Review and Intent To Reinstate Sahaviriya Steel Industries Public Company Limited in the Antidumping Duty Order, 73 Fed. Reg. 79,809 (Dec. 30, 2008).

[7] 19 U.S.C. § 1516a authorizes judicial review of final agency determinations in antidumping proceedings. 28 U.S.C. § 2637(d) requires the exhaustion of administrative remedies "where appropriate" in certain civil actions against the United States.

1312, 1315 (1993).

Finally, Commerce insists that the cases offered by Plaintiff, in which the Court exercised jurisdiction pursuant to section 1581(i), are distinguishable from the instant matter. See id. at 13-15. More specifically, the jurisdictional issues attendant in the cases cited by Plaintiff were not "matters relating to the merits of the action." Id. at 14. By contrast, Plaintiff's jurisdictional claim is inextricably intertwined with the merits of the present action, and the former cannot be decided without considering and deciding the latter. See id. at 15-16. Since the Court's jurisdiction here turns in part on the substantive issue of whether the Department's initiation of the changed circumstances review was proper or beyond the agency's authority, Commerce maintains that the Court is precluded from hearing SSI's claims. See id.

## ANALYSIS

Plaintiff invokes the Court's residual jurisdiction under 28 U.S.C. § 1581(i). By its terms, this section of the statute is an expansive grant of exclusive jurisdiction over certain causes of action against the United States. See 19 U.S.C. § 1581(i). Because subject matter jurisdiction is treated as a threshold determination, it must be examined separately and antecedently. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). Absent jurisdiction, a "court cannot proceed at all in any

cause." Id. Indeed, the rules of this Court dictate that if "the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." USCIT R. 12(h)(3).

It is well established that a plaintiff may not pursue an action under section 1581(i) if any other subsection of section 1581 "is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987); see also Int'l Custom Prods., 467 F.3d 1324; Nippon Steel Corp. v. United States, 219 F.3d 1348 (Fed. Cir. 2000); Shakeproof Indus. Prods. Div. of Ill. Tool Works Inc. v. United States, 104 F.3d 1309 (Fed. Cir. 1997); Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356 (Fed. Cir. 1992). Here, SSI does not contend that section 1581(c) is unavailable, but rather that the remedy provided under this provision is "manifestly inadequate." Pl.'s Memorandum at 8. Where another remedy is or could have been available, the party asserting section 1581(i) jurisdiction has the burden of showing the manifest inadequacy of that remedy. See Miller & Co., 824 F.2d at 964. SSI raises two main points in arguing that relief under section 1581(c), after waiting for Commerce to complete its inquiry, would be "manifestly inadequate." First, Commerce has acted ultra vires by initiating the changed circumstances review to assess reinstatement of a partially revoked antidumping order.

Second, SSI's forced participation in the underlying review imposes a substantial burden on the manufacturer.

While neither Congress nor the courts have provided a precise definition of the term "manifestly inadequate," given the clear Congressional preference expressed in section 1581(i) for review in accordance with section 1516a,[8] the Court must be careful not to interfere in ongoing proceedings absent a clear indication of the inadequacy of a section 1581(c) review. See Hysla, S.A. de C.V. v. United States, 21 CIT 222, 228, 960 F. Supp. 320, 325 ("Hysla I") (1997).

## I.   Section 1581(c) Is Not "Manifestly Inadequate"

### A.   Ultra Vires

SSI's principal argument for the invocation of the Court's residual jurisdiction, is that reinstatement of a partially revoked antidumping order constitutes ultra vires agency conduct because the provision authorizing the Department to conduct a changed

---

[8] The House Report adopting amendments to 28 U.S.C. § 1581 contains the following remarks: "[I]t is the intent of the Committee that the Court of International Trade not permit subsection (i), and in particular paragraph (4), to be utilized to circumvent the exclusive method of judicial review of those antidumping and countervailing duty determinations listed in section [1516a] . . . . The Committee intends that any determination specified in section [1516a], or any preliminary administrative action which, in the course of proceeding, will be, directly or by implication, incorporated in or superceded by any such determination, is reviewable exclusively as provided in [section 1516a]." H.R. Rep. No. 96-1235, at 48 (1980), as reprinted in 1980 U.S.C.C.A.N. 3729, 3759-60.

circumstances review, 19 U.S.C. § 1675(b)(1), applies exclusively to affirmative final dumping determinations made by Commerce or injury determinations made by the Commission. Indeed, Plaintiff's ultra vires argument forms the basis for all of its other claims in this matter. The alleged manifest inadequacy of section 1581(c); the Court's broad injunctive powers to halt an ultra vires review; the substantial burden imposed on Plaintiff as a result of its forced participation in an ultra vires proceeding; and even its counter argument to Defendants' ripeness challenge are all predicated on the assertion that Commerce acted outside the scope of its authority. For this reason, the Court agrees with SSI that the gravamen of its case involves the single legal issue of whether the Department's initiation of a changed circumstances review for the purpose of reinstating a partially revoked antidumping order constituted ultra vires government action. See Pl.'s Memorandum at 10.

Because Plaintiff's claim regarding the inadequacy of a remedy under section 1581(c) is inter-reliant with and contingent upon its claim of ultra vires agency conduct, a determination of what constitutes ultra vires activity becomes the focal point of the Court's review. In discussing this factor it is impossible to separate completely matters relating to the merits of this action

from the discussion of jurisdiction.[9]  Therefore, in order for the Court to adequately consider the jurisdictional issue it must review at least in part this substantive question.  A claim that an action is <u>ultra</u> <u>vires</u> is different from a claim that the agency's regulation incorrectly implements the statute that the agency is charged with administering.  In other words, an agency action is not <u>ultra</u> <u>vires</u> simply because it is "arguably a mistake of fact or law."  <u>State of Alaska v. Babbitt</u>, 67 F.3d 864, 867 (9th Cir. 1995) (citation omitted).  An <u>ultra</u> <u>vires</u> act is one performed without any authority to act whereas an error in the exercise of that power is insufficient to support an <u>ultra</u> <u>vires</u> claim.  <u>See</u> <u>Pennhurst</u> <u>State School & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n.11 (1984) (citing <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682 (1949)).  The scope of an agency's authority turns on whether the agency was empowered to engage in the challenged course of conduct in the first place.  For example, even if the Department acted erroneously, was it within the scope of its delegated power to do

---

[9] The Court takes this opportunity to recognize and reject, Commerce's argument that section 1581(i) jurisdiction is barred where the jurisdictional issue is intertwined with the merits of the action. This position is based on a flawed interpretation of the Federal Circuit's holding in <u>Nippon Steel</u>. The Court, in <u>Nippon Steel</u>, held that in the "unusual situation" where the jurisdictional issue and the merits are "inextricably intertwined" a court may bypass the jurisdictional question and proceed directly to the merits. <u>See</u> <u>Nippon Steel</u>, 219 F.3d at 1353. This Court, however, is not exercising its residual jurisdiction, but is only considering the threshold determination of whether jurisdiction exists at all.

so. See United States v. Yakima Tribal Court, 806 F.2d 853, 860 (9th Cir. 1986). In the case at bar, Commerce bases its authority for reinstatement on sections 1675(b) (changed circumstances review) and (d) (revocation of antidumping/countervailing duty order). Although neither section specifically provides for reinstatement, Commerce is endowed with both an explicit and implicit grant of authority to adopt regulations administering the antidumping statute.

It is well settled that when Congress leaves a gap within a statute administered by an agency, Congress impliedly entrusts the agency with the authority to fill such gap, but where, as here, Congress has expressly authorized Commerce to engage in rulemaking, the Court must infer that Congress has delegated authority to the agency to address statutory ambiguities. See United States v. Mead Corp., 533 U.S. 218, 229 (2001) (citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)). Congress' express delegation of authority to Commerce is codified under 19 U.S.C. § 1624, which provides:

> In addition to the specific powers conferred by this chapter the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of this chapter.

Currently, one of the mechanisms by which Commerce has chosen to administer sections 1675(b) and (d) is 19 C.F.R. § 351.222. This regulation describes in detail the procedures to be followed and

the conditions imposed on a producer seeking to avail itself of partial revocation.  As such, it is a proper exercise of the Department's explicit authority to resolve the ambiguity left by Congress in the relevant sections of the antidumping statute. Plaintiff can point to no language in the statute or prior case law which expressly denies Commerce the authority to reinstate a partially revoked antidumping order.  Absent any such legislative or judicial constraints the agency's actions in this matter cannot be considered <u>ultra</u> <u>vires</u>.

An <u>ultra</u> <u>vires</u> claim cannot be construed to allege that Commerce promulgated its reinstatement regulation based on an erroneous interpretation of the statute, but rather that Commerce acted outside the scope of its statutory authority, and was without any legal basis to make that interpretation at all.  Plaintiff's effort at re-casting its <u>ultra</u> <u>vires</u> argument, merely amounts to a claim that Commerce committed a "mistake of law" in promulgating the reinstatement regulation, not that the Department acted "completely outside [its] governmental authority."  <u>Alaska v. Babbitt</u>, 67 F.3d at 867.  If, instead, SSI had proffered an argument that Commerce's decision in this case was an errant application of the antidumping laws, the agency's interpretation of the statute, whether adopted pursuant to a rule-making or

adjudicative proceeding,[10] would be accorded deference consistent with the Supreme Court's decision in Chevron.[11] Plaintiff's reluctance to proceed in this manner is in no small measure due to the finality requirements of section 1516a and 5 U.S.C. § 704 (which provides that legal challenges to "preliminary, procedural, or intermediate" agency decisions are subject to review upon final agency action).[12]   Regardless, the Court cannot alter its legal

---

[10] The regulation on reinstatement of a partially revoked order, 19 C.F.R. § 351.222, was promulgated through notice and comment rule-making.  Thus, Commerce's policy is a "formal expression of an agency's interpretation of a statute that it administers" and is "normally entitled to Chevron deference." Motorola, Inc. v. United States, 436 F.3d 1357, 1365 (Fed. Cir. 2006).

[11] As directed by the Supreme Court, a reviewing court must first consider "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

[12] Although its wording is less than clear, Plaintiff's complaint is construed to bring this action under the Administrative Procedure Act ("APA"), i.e., 5 U.S.C. § 702. While not expressly stating that Plaintiff is filing suit under the APA, the complaint cites to 28 U.S.C. § 2631(i) in its allegation of standing, which provides for application of the APA. See Complaint ¶ 5. Construing Plaintiff's complaint to bring an action under the APA, however, does not alter the jurisdictional analysis. This Court's residual jurisdiction case law, including those decisions pertaining to the "manifestly inadequate" standard, is mirrored in section 704's requirement that "[a]gency action made reviewable by statute and final agency action for
(continued...)

analysis to accommodate Plaintiff's argumentum ab inconvenienti.

In support of its position, SSI points to this Court's holding in Asahi, and argues that because the regulation examined by the Court in Asahi is substantively no different from the Department's current regulatory provision for reinstatement, the existing regulation should be rejected as well. However, the source of the dispute in Asahi was the proper interpretation of 19 C.F.R. § 353.54(e) as it applied to the facts of that case, not whether the agency lacked the appropriate statutory basis for implementing the regulation. Read in its proper context, the holding in Asahi is inapposite for purposes of the instant matter, and the Court declines Plaintiff's invitation to review Commerce's current regulatory scheme under the aegis of an ultra vires rationale, other than to say that SSI has failed to show a patent violation of agency authority.[13]

---

[12](...continued)
which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

[13] The Court does not find the decisions Plaintiff cites, relating to the economic consequences of participation in administrative reviews, to be of direct relevance. See Hylsa II, 22 CIT at 47 (exercising residual jurisdiction because of the "grave economic harm" not adequately addressed under other subsections of 19 U.S.C. § 1581); Ascoflores, 13 CIT at 587, 717 F. Supp. 847, 850 (exercising jurisdiction under section 1581(i) because of "the difficulties of participation under the facts of this case"). On the other hand, cases challenging the scope of agency authority support the Court's rationale. See Techsnabexport 16 CIT 420, 795 F. Supp. 428 (residual

(continued...)

### B. Substantial Burden

The second prong of Plaintiff's "manifestly inadequate" argument suffers a similar fate. SSI claims that the burden imposed on a participant in a changed circumstances review is substantial because it would essentially require the same level of data collection as an administrative review. But having already determined that Commerce acted in conformity with a clearly expressed delegation of authority by Congress, and that the agency's actions are not ultra vires, the obligations associated with a lawfully commenced proceeding cannot be considered grounds for jurisdiction under section 1581(i). Regardless, without more, harm attributable to participation in a potentially unauthorized antidumping proceeding is insufficient to render the remedy afforded by section 1581(c) "manifestly inadequate." See Hysla I, 21 CIT at 227, 960 F. Supp. 320, 324. Contrary to SSI's claims, the great weight of authority holds that "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." Int'l Custom Prods., 467 F.3d at 1327 (quoting Miller

---

[13](...continued)
jurisdiction found where the existence of the antidumping duty order itself was called into question); see also Jia Farn, 17 CIT at 191, 817 F. Supp. 969, 973 (while exercising its residual jurisdiction, the Court found Commerce's initiation of a changed circumstances review for the purpose of reinstatement of an antidumping duty order, to be within the scope of agency authority under section 1675.

& Co., 824 F.2d 961, 964); see also F.T.C. v. Standard Oil, 449 U.S. 232, 244 (1980) ("the expense and annoyance of litigation is part of the social burden of living under government"); Gov't of the PRC, 31 CIT __, 483 F. Supp. 2d 1274, 1283 ("the cost associated with defending oneself in a trade remedy proceeding is not the type of burden with which this Court concerns itself"); Abitibi-Consolidated Inc. v. United States, 30 CIT 714, 724, 437 F. Supp. 2d 1352, 1362 (2006) (holding that the inconvenience and expense of the administrative and judicial review process cannot constitute manifest inadequacy).

SSI has failed to demonstrate that adequate redress cannot be obtained in an action brought under 28 U.S.C. § 1581(c) challenging the final results of Commerce's changed circumstances review. For instance, should Commerce decide to reinstate the partially revoked antidumping duty order as to SSI, Plaintiff will have the opportunity to bring an action challenging those results. In such an action, SSI is entitled to contest "any factual findings or legal conclusions upon which the determination is based," 19 U.S.C. 1516a(a)(2)(A), including the statutory and regulatory bases for the Department's initiation of the changed circumstances review. See Tianjin Magnesium Int'l. Co., Ltd. v. United States, 31 CIT __, 533 F. Supp. 2d 1327, 1338-39 (2008). Thus, had SSI waited to bring this action upon completion of the review, it could have contested the legality of Commerce's actions in a subsequent

challenge under section 1581(c).

## II.  Ripeness

SSI cannot invoke jurisdiction under section 1581(i) under the circumstances presented here, because the remedy afforded by section 1581(c) is not "manifestly inadequate."  Plaintiffs action, however, suffers from an additional jurisdictional defect.  SSI's failure to convince this Court of <u>ultra</u> <u>vires</u> agency conduct renders ineffective its argument that the issues presented in this case are ripe for judicial review.

The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-49 (1967).  In determining the ripeness of an issue, the Court must consider two factors: (1) "the fitness of the issue for judicial decision;" and (2) "the hardship to the parties of withholding court consideration."  <u>See</u> <u>Tokyo Kikai Seisakusho, Ltd. v. United States</u>, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (quoting <u>Abbott Labs.</u>, 387 U.S. 136, 149).

With respect to the first step, it is clear that non-final agency action is not ripe for review. <u>See</u> <u>id.</u> (citing <u>U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Commerce</u>, 413 F.3d

1344, 1349-50 (Fed. Cir. 2005) ("Textiles III"). SSI, however, does not challenge the general ripeness principles set forth in the surplus of cases regarding the need to establish final agency action. Instead, Plaintiff argues that none of these cases are relevant because they do not involve a challenge to ultra vires agency conduct, and that courts routinely reject ripeness challenges to otherwise non-final agency actions when a party has challenged those actions as ultra vires.[14] But SSI's only reference to the hardship requirement is to allege the imposition of a severe hardship by virtue of the company's forced participation in an ultra vires proceeding. Insofar as this Court has already found that Commerce acted within the scope of its legislatively delegated authority, Plaintiff's iteration of its ultra vires claim cannot

---

[14] Inexplicably, SSI offers the holding from U.S. Ass'n of Imps. of Textiles & Apparel v. United States, 29 CIT 323, 366 F. Supp. 2d 1280 (2005) ("Textiles II"), as support for this position. See Pl.'s Mem. in Opp'n to Def.'s & Def.-Int.'s Mot. to Dismiss at 19 ("Pl.'s Response"). In a companion case, U.S. Ass'n of Imps. of Textiles & Apparel v. United States, 28 CIT 2115, 350 F. Supp. 2d 1342 (2004) ("Textiles I"), this Court granted plaintiff's request for preliminary injunction while reserving judgment on a ripeness challenge from Commerce. In Textiles II, the Court exercised jurisdiction over plaintiff's claims and rejected Commerce's ripeness bid. In hearing the government's appeal of the Textiles I decision, the Federal Circuit reversed the lower court's judgment because the decision being challenged was "merely a threshold determination," Textiles III, 413 F.3d at 1350, thus finding "the government's argument as to ripeness sufficient." Id. at n.3. The appeals court's decision disposed of both Textiles I and Textiles II. Therefore, Plaintiff's characterization of the Textiles III holding, as one not decided on ripeness grounds, is wholly inaccurate. See Pl.'s Response at 20 n.7.

succeed. Therefore, the decision by Commerce that SSI seeks to challenge in connection with the yet to be completed changed circumstances review does not constitute final agency action, and dismissal of this action will not render any legally cognizable hardship upon Plaintiff.

In sum, the changed circumstances review is ongoing and, upon its conclusion, SSI will have the opportunity to challenge any aspect of the review. Plaintiff has failed to convince this Court that jurisdiction under section 1581(c) will be unavailable, or that any remedy afforded in such action is "manifestly inadequate." Jurisdiction under section 1581(i) therefore cannot lie. Accordingly, the exclusive means of judicial review for Plaintiff's claims falls under 28 U.S.C. § 1581(c).

Notwithstanding Plaintiff's inability to establish subject matter jurisdiction under section 1581(i), this matter would be subject to dismissal on the grounds of lack of ripeness.

**CONCLUSION**

For the reasons set forth above, the motions to dismiss filed by Defendant and Defendant-Intervenor are granted. Plaintiff's motion for a preliminary injunction is denied. Judgement to be entered accordingly.

 /s/ Nicholas Tsoucalas 
**NICHOLAS TSOUCALAS**
**SENIOR JUDGE**

Decided:  February 24, 2009
          New York, New York

**ERRATA**

<u>Sahaviriya Steel Indus. Public Co. Ltd.</u>, Court No. 08-00353, Slip Op. 09-15, dated Feb. 24, 2009.

On page 24, Line 18: "19 U.S.C. § 1624" should read "5 U.S.C. § 301"

On page 24, Indented paragraph beginning on Line 19 should read:

> "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, [and] the distribution and performance of its business . . . ."

**Dated**: February 25, 2009