# United States Court of Appeals for the Federal Circuit

---

**SAHAVIRIYA STEEL INDUSTRIES PUBLIC COMPANY LIMITED,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellee.*

---

2010-1480

---

Appeal from the United States Court of International Trade in case no. 09-CV-0229, Senior Judge Nicholas Tsoucalas.

---

Decided: June 17, 2011

---

KENNETH J. PIERCE, Hughes Hubbard & Reed, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was ROBERT L. LAFRANKIE. Of counsel was VICTOR S. MROCZKA.

PATRICIA M. MCCARTHY, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee the United States. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MICHAEL D. PANZERA, Attorney. Of counsel on the brief was AARON P. KLEINER, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

JEFFREY D. GERRISH, Skadden, Arps, Slate, Meagher & Flom LLP, of Washington, DC, for defendant-appellee United States Steel Corporation. With him on the brief was ELLEN J. SCHNEIDER.

---

Before NEWMAN, LOURIE, and LINN, *Circuit Judges*.

LINN, *Circuit Judge*.

Appellant Sahaviriya Steel Industries Public Company Ltd. ("SSI") appeals from a decision of the Court of International Trade ("CIT"), *Sahaviriya Steel Indus. Pub. Co. v. United States* ("*SSI II*"), 714 F. Supp. 2d 1263 (Ct. Int'l Trade 2010), affirming the Department of Commerce's ("Commerce")'s final results in a changed circumstances review ("CCR") under 19 U.S.C. § 1675(b), *Final Results of Antidumping Duty Changed Circumstances Review*, 74 Fed. Reg. 22,885 (May 15, 2009) ("*Final Results*"). In *SSI II*, the CIT held that, after revoking an antidumping duty order with respect to SSI, Commerce properly conducted a CCR to reinstate SSI in that order. 714 F. Supp. 2d at 1277. Because Commerce reasonably interpreted and exercised its CCR and revocation authorities under 19 U.S.C. §§ 1675(b) and (d), this court affirms the CIT's decision.

## I. BACKGROUND

### A. The Antidumping Duty Order

On November 29, 2001, Commerce issued an anti-dumping duty order on certain hot-rolled carbon steel flat products from Thailand ("the subject merchandise"). *Antidumping Duty Order: Certain Hot-Rolled Carbon Steel Flat Products From Thailand*, 66 Fed. Reg. 59,562 (Dep't of Commerce Nov. 29, 2001) ("*Order*"). The *Order* followed the filing of a petition and final determinations of dumping and injury by Commerce and the International Trade Commission ("ITC"). *Id.* at 59,563. In the *Order*, Commerce found that SSI was selling the subject merchandise at less than normal value and assigned SSI a dumping margin of 3.86%. *Id.*

On November 30, 2004, SSI requested an administrative review and revocation of the *Order* with respect to its subject merchandise based on the absence of dumping for the equivalent of three consecutive years. *See Preliminary Results of Antidumping Duty Administrative Review and Intent to Revoke and Rescind in Part*, 70 Fed. Reg. 73,197 (Dep't of Commerce Dec. 9, 2005). Commerce made the preliminary determination that SSI had not sold the subject merchandise at less than normal value during the first and third of three consecutive administrative review periods, satisfying the three year requirement based on an "intervening year" allowance. *See id.* at 73,201-02. In its request, SSI also included an agreement ("the Certification") signed by its president, stating that SSI would not engage in dumping following the revocation. *See id.* at 73,201. The Certification reads, in relevant part: "Should the department of Commerce conclude, subsequent to revocation, that SSI sold the subject merchandise at less than normal value, I certify that SSI

agrees to immediate reinstatement of the antidumping duty order regarding the subject merchandise." J.A. 80.

After the completion of a third administrative review period, Commerce issued a final decision granting SSI's request for partial revocation from the *Order*. *Final Results of Antidumping Duty Administrative Review, Partial Revocation of Antidumping Duty Order and Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 28,659 (Dep't of Commerce May 17, 2006) ("*Final Revocation Decision*"). Commerce reasoned that SSI continued to satisfy the requirements for revocation under its regulations, namely (1) no sales at less than normal value for the equivalent of three consecutive years and (2) the Certification of immediate reinstatement in the *Order* in the event of resumed dumping. *See Issues and Decision Memorandum for the* [*Final Revocation Decision*], A-597-817, 2006 WL 1388746 (May 17, 2006). The *Order* remained in effect with respect to the other subject exporters and producers. *See Final Revocation Decision*, 71 Fed. Reg. at 28,661. On August 1, 2006, Commerce initiated a "sunset review" of the *Order*, *Continuation of Antidumping Duty and Countervailing Duty Orders*, 72 Fed. Reg. 73,316 (Dep't of Commerce Dec. 27, 2007) ("*Sunset Review*"), as required by 19 U.S.C. § 1675(c). Following this review, Commerce published notice of continuation of the *Order* based on the finding that revocation of the same "would likely lead to continuation or recurrence of dumping . . . and material injury to an industry in the United States . . . ." *Sunset Review*, 72 Fed. Reg. at 73,318. SSI participated in this review proceeding, filing a brief in favor of full revocation of the *Order*. *See* U.S. Int'l Trade Comm'n, Pub. No. 3956, *Hot-Rolled Steel Products From Argentina, China, India, Indonesia, Kazakhstan, Romania, South Africa, Taiwan, Thailand, and Ukraine* 4 n.8, 5 (2007), *available at* http://www.usitc.gov/publications/701_731/pub3956.pdf ("USITC Pub. No. 3956").

### B. Commerce's Changed Circumstances Review

On November 8, 2006, United States Steel Corporation ("U.S. Steel") alleged that SSI had resumed dumping and petitioned Commerce to conduct a CCR to determine whether SSI should be reinstated in the *Order*. *Initiation of Antidumping Duty Changed Circumstances Review*, 73 Fed. Reg. 18,766 (Dep't of Commerce Apr. 7, 2008) ("*Initiation of CCR*"). SSI submitted no fewer than ten letters to Commerce contesting U.S. Steel's petition on the grounds that Commerce lacked the authority to conduct a CCR to reinstate SSI in the *Order*. *Id*. at 18,767. Rejecting SSI's argument, Commerce initiated the CCR, explaining that it possessed the statutory authority to reinstate SSI in the *Order* and that doing so by means of a CCR is consistent with the agency's practice. *See id*. at 18,770.

SSI then filed suit in the CIT seeking a preliminary injunction prohibiting Commerce from conducting the CCR on the ground that Commerce's actions were *ultra vires*. *Sahaviriya Steel Indus. Pub. Co. v. United States* ("*SSI I*"), 601 F. Supp. 2d 1355, 1361 (Ct. Int'l Trade 2009). The CIT dismissed the complaint as not ripe for review. *Id*. at 1370. In dismissing the complaint, the CIT addressed the merits of the *ultra vires* claim, holding that Commerce acted within its implicit and explicit authority to adopt regulations administering the antidumping statute. *Id*. at 1367-68. Following *SSI I*, Commerce issued a final determination reinstating SSI in the *Order* based on the finding that SSI had resumed dumping at a margin of 9.04%. *Final Results*, 74 Fed. Reg. at 22,886.

Following Commerce's *Final Results*, SSI again brought suit in the CIT, this time contesting its reinstatement in the *Order* under a "mistake of law" theory, arguing that Commerce unreasonably interpreted the governing statute. *SSI II*, 714 F. Supp. 2d at 1273-74.

The CIT held that Commerce reasonably interpreted its CCR and revocation authorities under 19 U.S.C. §§ 1675(b) and (d), within the *Chevron* framework, and accordingly affirmed Commerce's *Final Results*. *Id.* at 1277. SSI timely appealed, and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

This court reviews a CIT decision regarding Commerce's antidumping determinations de novo, applying the same standard of review to Commerce's determinations as did the CIT. *Carpenter Tech. Corp. v. United States*, 510 F.3d 1370, 1372 (Fed. Cir. 2007). Accordingly, this court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id.* (quoting 19 U.S.C. § 1516a(b)(1)(B)(I)).

"[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under [*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984)]." *Pesquera Mares Australes Ltd. v. United States*, 266 F.3d 1372, 1382 (Fed. Cir. 2001). Under *Chevron*, the court first asks whether Congress has directly spoken to the precise question at issue; if so, the inquiry ends and the Court "must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (citing *Chevron*, 467 U.S. at 842-43). If the statute is silent or ambiguous with respect to the issue, the court must ask whether Commerce's interpretation is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843.

### A. Revocation in Part Under 19 U.S.C. § 1675(d)

As relevant to the present case, 19 U.S.C. § 1675(d) provides that "[i]n general . . . [Commerce] may revoke, in whole or in part, . . . an antidumping duty order . . . after review under [a periodic administrative review or CCR]." Pursuant to Commerce's regulations:

> in determining whether to revoke an antidumping duty order in part, the Secretary will consider:
>
> . . .
>
> (B) Whether, for any exporter or producer that the Secretary previously has determined to have sold the subject merchandise at less than normal value, *the exporter or producer agrees in writing to immediate reinstatement in the order, as long as any exporter or producer is subject to the order, if the Secretary concludes that the exporter or producer, subsequent to the revocation, sold the subject merchandise at less than normal value.*

19 C.F.R. § 351.222(b)(2)(i)(B) (emphasis added). Thus, Commerce interprets the revocation "in part" language in § 1675(d) to permit conditional revocation, i.e. revocation subject to reinstatement, if Commerce finds that a party subject to an antidumping duty order resumes dumping.

SSI argues that Commerce impermissibly interpreted § 1675(d) to permit conditional revocation. According to SSI, once Commerce revokes an antidumping duty order with respect to a particular producer or exporter, "[t]he order ceases to exist with respect to the merchandise for which it has been revoked," and accordingly cannot later be reinstated without a new, formal injury determination under 19 U.S.C. § 1673. Appellant Br. 25. To support its finality argument, SSI relies on: (1) the revocation stat-

ute, providing that "[a] determination . . . to revoke an order . . . *shall apply* with respect to *all* unliquidated entries of the subject merchandise," 19 U.S.C. § 1675(d)(3) (emphasis added); and (2) Commerce's implementing regulations, defining the word "revocation" as "the *end* of an antidumping . . . proceeding," 19 C.F.R. § 351.222(a) (emphasis added), not distinguishing between revocations in whole or in part in the definition. SSI asserts that the statute is clear on its face that a revocation is final, whether in whole or in part, and thus this court should not give *Chevron* deference to Commerce's interpretation. In the alternative, SSI asserts that even if the court finds ambiguity in § 1675(d) and applies *Chevron* deference, the court should not uphold Commerce's interpretation permitting conditional revocation in part of an antidumping duty order because Commerce went "far beyond any reasonable meaning that the statute might bear" and created "statutory authority where none exists." Appellant Br. 32. Finally, SSI argues that its Certification of immediate reinstatement in the *Order* in the event of resumed dumping is not a concession of the reasonableness of the practice because Congress has not conferred such power to Commerce, and SSI, a private party, cannot confer the legal authority for an agency's action that is otherwise "illegal." Appellant Br. 33 n.94.

U.S. Steel and the Government ("Appellees") counter that Commerce properly interpreted its revocation authority to allow for conditional revocation "in part." According to U.S. Steel, because the language of § 1675(d) authorizes Commerce to revoke antidumping duty orders, but does not state when Commerce must exercise such authority, "the agency is charged with supplying its own reasonable policies, standards and procedures." Appellee Br. U.S. Steel 21. Similarly, the Government argues in its brief that because § 1675(d) does not define "in part," Commerce reasonably "filled this statutory gap" by im-

plementing procedures for conditional revocation in part. Appellee Br. Gov't 13. The Government also asserts that SSI conceded the reasonableness of Commerce's interpretation of § 1675(d) by agreeing in its Certification to immediate reinstatement in the *Order* in the event that SSI resumed dumping. In its brief, however, U.S. Steel states that it is not SSI's Certification, but the authority conferred by the statute, that is the basis of Commerce's authority to reinstate SSI in the *Order*. The Appellees argue that a new injury determination was not required to reinstate SSI in the *Order* because the revocation in part was based solely on the cessation of dumping and did nothing to disturb the ITC's original injury determination, which included SSI's subject merchandise.

As a policy matter, both the Appellees and the CIT opinion below caution that absent Commerce's ability to immediately reinstate a party revoked in part from an antidumping duty order, that party could simply refrain from dumping for three consecutive years, obtain revocation in part, and immediately thereafter resume dumping—effectively averting the antidumping duty order until Commerce and the ITC make new, formal dumping and injury determinations.

This court concludes that § 1675(d) is ambiguous and that Commerce reasonably interpreted § 1675(d) to permit the conditional revocation of an exporter or producer. Section 1675(d)(1) gives Commerce the authority to revoke antidumping duty orders "in whole or in part." This language provides minimal guidance other than providing that the revocation should be carried out "after review under subsection (a) [a periodic administrative review] or (b) [a CCR] . . . ." 19 U.S.C. § 1675(d)(1). The language of the statute is silent as to the conditions that might warrant the revocation of an antidumping duty order or the particular circumstances that would trigger such action. Thus, Commerce was left by Congress to

promulgate guidelines as to when revocations "in whole or in part" are appropriate and to set forth the proper procedures therefore. *See Chevron*, 467 U.S. at 843 ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").

Commerce interpreted its statutory authority under § 1675(d) in promulgating its revocation regulations at 19 C.F.R. § 351.222. Just as the governing statute distinguishes between revocations "in whole *or* in part," § 1675(d)(1) (emphasis added), so too does Commerce in its regulations: section 351.222(b)(1) governs revocation "in whole," and section 351.222(b)(2) governs revocation "in part." With regard to revocation "in part," section 351.222(b)(2)(i)(B) provides that the Secretary should consider whether the exporter or producer being considered for revocation "agree[d] in writing to its immediate reinstatement in the order . . . if the Secretary concludes that the exporter or producer, subsequent to revocation, [resumed dumping]." While SSI's Certification agreeing to immediate reinstatement in the *Order* cannot give Commerce any authority it does not possess, SSI's complaints about Commerce's action ring hollow given SSI's express acknowledgement that it would be subject to immediate reinstatement if dumping resumed.

In addition, Commerce's interpretation of its revocation authority furthers the policy consideration of preventing a party subject to an antidumping duty order from refraining from dumping for three consecutive years, obtaining revocation in part, and then subsequently resuming dumping—effectively evading the antidumping duty order. *See SSI II*, 714 F. Supp. 2d at 1276.

SSI argues that this evasion concern is "false" because "[t]he statute provides [an] explicit and exclusive remedy

in § 1673" through "findings of dumping and injury." Appellant Reply Br. 18.  SSI's argument is incorrect for two reasons.  First, a new ITC injury determination under § 1673 would be an unnecessary administrative burden on the ITC contrary to the intent of the antidumping statute. *See Am. Lamb Co. v. United States*, 785 F.2d 994, 1002-03 (Fed. Cir. 1986) (expressing the policy consideration in the context of a preliminary injury determination of "eliminat[ing] unnecessary and costly investigations which are an administrative burden and an impediment to trade"); *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 931 (Fed. Cir. 1984) (rejecting the idea that "the Commission must conduct a review investigation in the same 'neutral' manner as an original investigation" and "not agree[ing] that a review investigation begins on a clean slate just as though it were an original investigation to determine whether an antidumping order should be put into effect"); *Avesta AB v. United States*, 689 F. Supp. 1173, 1180 (Ct. Int'l Trade 1988) ("[A] request for review of an affirmative injury determination [through a CCR] and the resultant review investigation are premised upon an underlying finding of injury from dumping . . . which is entitled to deference and should not be disturbed lightly.").  Second, as the Appellees correctly argue, no new injury determination is required because the original ITC injury determination includes SSI's subject merchandise and is not disturbed by the revocation in part:

> The ITC's injury determination [] does not examine the injury caused by discrete companies, but rather the injury caused by all dumped exports . . . . Even if one or more exporters in that country may have been revoked from the order on the basis of absence of dumping, all dumped exports of subject merchandise from that country continue to cause or threaten material injury, pursuant to the ITC's affirmative injury determination.

*Initiation of CCR*, 73 Fed. Reg. at 18,771.

As Commerce explained, the original injury determination for the imposition of the *Order* remained valid and in effect for all subject merchandise, including SSI's. Three months after its revocation in part from the *Order*, SSI participated in Commerce's *Sunset Review* of the *Order*, filing a brief in support of full revocation of the *Order* as to all subject merchandise. *See* USITC Pub. No. 3956 at 4 n.8. SSI's post-revocation involvement in the *Sunset Review* demonstrated that SSI remained within the ambit of the *Order*, particularly because SSI's subject merchandise was still included in the injury determination giving rise to the *Order*.

This court agrees with the Appellees that Commerce's revocation in part was based on SSI's cessation of dumping and did not disturb the ITC's injury determination. If this court were to accept SSI's assertion that the original injury determination was somehow invalid as to SSI because of the revocation in part, such a holding would require the ITC to make an injury determination for SSI's subject merchandise separately from the other Thai producers' and exporters' subject merchandise. As noted in the *Initiation of CCR*, this is inconsistent with the established ITC practice of evaluating the injury to a domestic industry caused by all dumped exports, not discrete companies. 73 Fed. Reg. at 18,771. Accordingly, the CIT correctly held that no new injury determination is required to reinstate a previously revoked party in an existing antidumping duty order when the original affirmative injury determination includes the revoked party's subject merchandise and has not otherwise been invalidated (for example, through a sunset review proceeding under § 1675(c) or through a revocation in full).

For these reasons, this court holds, applying *Chevron* deference, that Commerce reasonably interpreted its

revocation authority under § 1675(d) to permit conditional revocation in part of SSI from the *Order*.

## B. Commerce's Authority to Conduct Changed Circumstances Reviews Under § 1675(b)

19 U.S.C. § 1675(b)(1) governs Commerce's authority to conduct CCRs. The statute provides, in relevant part:

> In general . . . [w]henever the . . . Commission receives information concerning, or a request from an interested party for a review of—
>
> (A) *a final affirmative determination that resulted in an antidumping duty order* under this subtitle . . .
>
> (B) a suspension agreement accepted under section 1671c or 1673c of this title, or
>
> (C) a final affirmative determination resulting from an investigation continued pursuant to section 1671c(g) or 1677c(g) of this title,
>
> which shows *changed circumstances sufficient to warrant a review of such determination* . . . the Commission . . . shall conduct a review of the determination or agreement after publishing notice of the review in the Federal Register.

§ 1675(b)(1) (emphases added).

SSI argues that Commerce lacks the statutory authority to conduct a CCR to review the revocation of an antidumping duty order. According to SSI, Congress expressly limited Commerce's authority to conduct a CCR to the three situations described in the statute in subsections 1675(b)(1)(A)-(C). Looking to subsection (A), SSI

contends that "by selecting the word 'that,' Congress restrict[ed] CCRs to those specific final determinations resulting in an order and allow[ed] no others." Appellant Br. 19. According to SSI, conducting a CCR of a *revocation* is the opposite of a determination "result[ing] in an antidumping duty order," and thus Commerce's interpretation is impermissible in light of the express language of the statute. Under *Chevron*, SSI argues that the analysis ends at the express intent of Congress.

The Appellees counter that § 1675(b)(1) provides Commerce with broad authority to conduct CCRs to address changed circumstances sufficient to warrant agency reconsideration of antidumping duty determinations. U.S. Steel argues that the situation at hand falls squarely within the express statutory framework because (1) there was a "final affirmative determination resulting in an antidumping duty order," i.e. Commerce's original *Order*; and (2) there was a change in circumstances sufficient to warrant review, i.e. the finding that SSI had resumed dumping following revocation in part. In the alternative, U.S. Steel argues that even if the CCR does not fall squarely within the language of subsection 1675(b)(1)(A), the CCR in this case is still proper in light of Commerce's broad authority to conduct CCRs under § 1675(b). U.S. Steel relies on the CIT's statement in *Mittal Canada, Inc. v. United States* for the proposition that

> [t]he scope of Commerce's authority to initiate changed circumstances reviews under 19 U.S.C. § 1675(b)(1) is delimited only by the general requirement that there be 'changed circumstances sufficient to warrant a review' of the antidumping order. Commerce's discretion is broad, and the range of matters subject to changed circumstances reviews is wide.

461 F. Supp. 2d 1325, 1332 n.7 (Ct. Int'l Trade 2006). Finally, U.S. Steel argues that under this court's holding in *Tokyo Kikai Seisakusho, Ltd. v. United States* (*"TKS"*), 529 F.3d 1352 (Fed. Cir. 2008), Commerce also possesses the inherent authority to reconsider its decision to grant SSI's request for revocation in part.

Taking a slightly different approach, the Government states that "subsection 1675(b)(1) does not expressly authorize changed circumstances reviews for reinstatement." Appellee. Br. Gov't 26. The Government's argument aligns with U.S. Steel's argument in the alternative, that even if there is no express statutory authority, Commerce's CCR authority is not limited to those circumstances specifically set forth in the statute, relying on this court's holdings in *TKS* and the CIT's statement in *Mittal* to support its argument.

In *Mittal*, which is not binding on this court, Commerce utilized a CCR to evaluate whether one company was the successor-in-interest to another for the purpose of assessing the appropriate cash deposit rate for that company's entries that were subject to an antidumping duty order. 461 F. Supp. 2d at 1327. Although the CIT in *Mittal* stated in a footnote that Commerce has broad authority to conduct CCRs, "delimited only by the general requirement that there be 'changed circumstances sufficient to warrant a review' of the antidumping duty order," *Id.* at 1332 n.7, the issue in *Mittal* was not the scope of Commerce's CCR authority, but rather whether Commerce's automatic liquidation regulation (19 C.F.R. § 351.212) and interpretation thereof were in accordance with the law. *Id.* at 1327. Because the scope of Commerce's CCR authority was not at issue in *Mittal*, this court finds the parties' arguments regarding the statement in footnote 7 to be unavailing and the language in that footnote to be similarly unhelpful in delineating the

scope of Commerce's CCR authority as intended by Congress.

The opinion in *TKS* warrants greater attention, as it comes closer to addressing the issue in this case. In *TKS*, the Japanese producer, Tokyo Kikai Seisakusho, Ltd. ("the producer"), submitted false information to Commerce during one of its yearly administrative reviews that resulted in the company's revocation in part from an antidumping duty order. 529 F.3d at 1355, 1357. Commerce utilized a CCR to reconsider the tainted administrative review and reinstate the producer in the antidumping duty order. *Id.* at 1357-58. The issue was whether Commerce abused its authority under § 1675(b) in conducting a CCR to reconsider its administrative decision and reinstate the producer in the antidumping duty order. *Id.* at 1358. This court upheld Commerce's reconsideration of the administrative review and resulting reinstatement on the basis of Commerce's inherent authority in preserving the integrity of the agency in the face of fraud. *Id.* at 1361-62. SSI argues that this case is different from *TKS* because: (1) *TKS* involved fraud that undermined the legitimacy of the initial revocation decision; and (2) the court in *TKS* declined to consider the precise limits of Commerce's CCR authority.

This court agrees with SSI that the inherent authority to reconsider articulated in *TKS* does not extend to the facts of this case. In *TKS*, this court stated:

> While Commerce labeled its proceedings as a 'changed circumstances review,' its actions . . . are not properly characterized as such. For this reason, the trial court was not required to decide whether Commerce's actions were consistent with § 1675(b)(1). Instead, the trial court correctly ruled that Commerce, under the circumstances

presented, acted within its inherent authority to
protect the integrity of its proceedings from fraud.

*Id.* at 1361. In the present situation, Commerce utilized a
CCR to reconsider the revocation in part in light of a
finding that SSI had resumed dumping, not because of
any error or fraud in the original revocation proceeding.
Here, unlike in *TKS*, this court must decide whether
Commerce properly acted within the scope of its authority
under § 1675(b)(1). We hold that it did.

This court agrees with Appellee U.S. Steel that Com-
merce's CCR of the *Order* fell squarely within the ambit of
subsection 1675(b)(1)(A) because Commerce was indeed
conducting a CCR of "a final affirmative determination
that resulted in an antidumping duty order." This court
is not persuaded by SSI's attempt to characterize the CCR
as an improper CCR of a revoked, non-existent antidump-
ing duty order. At no time did Commerce purport to
conduct a CCR of the revocation in isolation, but rather
reviewed the existing *Order* in light of changed circum-
stances, namely SSI's resumed dumping. *See, e.g., Initia-
tion of CCR*, 73 Fed. Reg. 18,766 ("Petitioner requested
that [Commerce] *reinstate the Hot-Rolled Steel Order* [i.e.,
the original *Order*] with respect to SSI's exports . . . ."
(emphasis added)).

As explained in Part A, the original *Order* remained
valid and in effect with respect to the other subject ex-
porters and producers. Just as Commerce may conduct a
CCR to evaluate an existing antidumping duty order for
the purposes of revocation in part (pursuant to
§ 1675(d)(1)), so too may Commerce conduct a CCR to
evaluate whether that party should be reinstated in that
order. Here, Commerce conducted a CCR of the *Order*, "a
final affirmative determination that resulted in an anti-
dumping duty order," found that SSI had resumed dump-
ing, and thus reinstated SSI's subject merchandise in the

*Order*. *Final Revocation Decision*, 71 Fed. Reg. at 28,661. As discussed in Part A, this dumping determination was all that was necessary to reinstate SSI in the *Order* because the ITC's injury determination giving rise to the *Order* included SSI's subject merchandise and remained unaffected by SSI's revocation in part. Accordingly, this court concludes that Commerce properly conducted a CCR—under the express authority found in subsection 1675(b)(1)(A)—to reconsider the existing *Order* with respect to SSI's subject merchandise. Based on this disposition, we need not address whether Commerce's CCR authority may extend to situations that fall outside the express ambit of subsections 1675(b)(1)(A)-(C).

## III. CONCLUSION

For the foregoing reasons, this court concludes that Commerce reasonably interpreted its revocation and CCR authority and acted pursuant thereto with respect to SSI's revocation and subsequent reinstatement in the *Order*. Accordingly, the decision of the CIT is affirmed.

**AFFIRMED**